CASE 4.—ACTION BY EDWARD MESSMER, JR., AGAINST THE BELL & COGGESHALL COMPANY FOR DAMAGES FOR PERSONAL INJURIES.—March 23, 1909.

## Messmer v. Bell & Coggeshall Co.

Appeal from Jefferson Circuit Court, Common Pleas Branch (Third Division).

MATT O'DOHERTY, Judge.

Judgment for defendant, plaintiff appeals—Reversed.

1. Master and Servant—"Independent Contractor."—An "independent contractor" is one who is independent of his employer in the doing of his work, and may work when and how he prefers.

Messmer v. Bell & Coggeshall Co.

2.  Master and Servant—"Servant."—A "servant" is one who is
    employed by another and is subject to the control of his
    employer.
3.  Master and Servant—Injuries to Servant—Independent Con-
    tractors.—One employed by defendants to squeeze boxes for
    them in their factory with their machinery as and when
    directed by their foreman, and paid by the box, with the right
    to hire and pay his own assistant, was not an independent
    contractor, and for his negligence in operating the box ma-
    chine, whereby his assistant was injured, defendants were
    liable.

O'NEAL & O'NEAL for appellant.

1. This work was done in the factory of the appellee, where
there were many employed and many machines, and it is custo-
mary for the foreman to employ and even discharge employes.
2. This boy, only thirteen years of age, supposed he was work-
ing for the company.
3. The work was done in a room that was under the super-
vision and control of appellee's superintendent.
4. The work was done on the machine that was owned by the
defendant, running by its power, subject to its inspection, and
all of the material used in the work was the material of the
company, and Wommer, instead of receiving wages by the day
or week, was paid by the piece, and he hired the boys, and was
allowed, in his wages, the amount paid to these boys. The com-
pany had the right to discharge any from his service for mis-
conduct, and had the right at any time to discharge Wommer and
did discharge him.
5 The president and officers of the defendant knew that boys
worked on this machine and in connection with it. Mr. Embry
so testifies. It left to Wommer the right to tell these boys what
work to do and how to do it.

### AUTHORITIES.

Jacob, by etc., v. Fuller & Hutsinpiler Co., 67 Ohio St. 70, 65
L. R. A., 833, and note; Holmes v. Tenn. Coal, etc., Co., 3 Am.
Neg. Rep., 174 (La.); Thompson on Negligence, Vol. 1, p. 578,
Sec. 629 and notes; Thompson on Negligence, Vol. 1, p. 592, Sec.
651; Waters v. Pioneer Fuel Co., 52 Minn., 474; Adams Express
Co. v. Schofield, by etc., 23 Ky. Law Rep., 1123.

GREGORY & M'HENRY for appellees.

### POINTS AND AUTHORITIES.

1. Appellant not prejudiced by failure of court to instruct
as to duty of appellee to warn him of danger. (Hutchison v.
Cohankus Mfg. Company, 112 S. W., 901; Wilson v. Chess &
Wymond Company, 117 Ky., 567; Kelly v. Barber Asphalt Pav-
ing Company, 93 Ky., 363; McCormick Harvesting Company v.
Liter, 23 K. L. R., 2154.)

Messmer v. Bell & Coggeshall Co.

2. It is incumbent upon complainant to show real cause of injury and where the cause is left merely to conjecture no recovery can be had. (Hurt v. L. & N. R. R. Company, 116 Ky., 553; Louisville Gas Company v. Kaufman, Straus & Company, 105 Ky., 156; L. & N. R. R. v. Walthen, 22 K. L. R., 85; L. & N. R. R. Co. v. McGary, 104 Ky., 516; Hughes v. Cincinnati, etc., R. R. Company, 91 Ky., 531; Thompson on Negligence, page 364.)

3. A servant leaving place of employment and going to place of danger cannot recover. (L. & N. R. R. Co. v. Pendleton, 31 K. L. R., 1029; Witten v. Bell & Coggeshall Company, 27 K. L. R., 580; Colorado v. Capito, 40 Pacific, 248; Gillem v. Rowly, 19 Atlantic, 504.)

4. Master not responsible for failure to guard ordinarily inaccessible parts of machinery. (Toler v. Swan Day Lumber Co., 30 K. L. R., 810; Shultz v. Eckert Mfg. Co., 36 Southern Rep., 593; McGuerty v. Hale, 36 N. E. (Mass.), 682; Knight v. Paducah Box & Basket Co., 31 K. L. R., 629.)

5. Where danger is obvious plaintiff, though a minor, assumes risk if of age, intelligence and discretion sufficient to understand and appreciate risk. (Thompson on Negligence, Sec. 4681; Kelly v. Barber Asphalt Co., 93 Ky., 393; Baird Brothers v. Dearing, 13 K. L. R., 271; Wilson v. Chess Wymond & Co., 117 Ky., 567; Clifton v. C. & O. R. R. Co., 102 S. W., 247.)

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Edward Messmer, a little boy 13 years of age, working under Charles Wommer at the factory of the Bell & Coggeshall Company, had his hand hurt by getting it in between some unprotected cogwheels, and brought this action to recover for his injury. A trial was had which resulted in a verdict in his favor for $2,000. A new trial was granted, and a second trial was had, which resulted in a judgment and verdict for the defendant. The plaintiff appeals.

The defendant insisted on the trial that the boy was not in its employment, that Charles Wommer was an independent contractor, that he employed the boy, and that the boy was his servant. The court, at the conclusion of all the evidence, in effect instructed the jury that the Bell & Coggeshall Company was not liable for the negligence of Wommer, thus in effect holding that he was an independent contractor; and this is in effect the only question to be decided on the appeal. There is in the factory of

the Bell & Coggeshall Company a machine known as a "squeezer," in which boxes are put together. Charles Wommer was in charge of this machine, and was paid by the box for squeezing the boxes. He was allowed to employ his own assistant, and paid the assistant himself. He employed Edward Messmer, who had been working with him about a week when the accident occurred. At the time of the accident the machine was in operation. Wommer went across the building to get a box, and while he was gone told the boy to hold a lever down, which prevented the machine from running in and out while he was gone. While the boy was thus holding the lever, a trip which was a part of the machine came up behind in its regular revolution striking the lever and knocking the boy's hand from it. His hand was near the cog-wheels, and, when struck from the lever, got into the cogs and was painfully injured. The child was not warned of the danger, or given any instruction as to how to perform his duty, or cautioned in any way about the trip coming up and striking the lever. It was not necessary for the boy to hold the lever while Wommer was gone, if Wommer had set a prop under the machine to prevent it from coming down. If the defendant was chargeable with the negligence of Wommer in placing the boy where he was and directing him to hold the lever without any instruction as to his danger or warning as to how to perform his duty, clearly there was sufficient evidence of negligence to go to the jury; and so the question is: Was Wommer an independent contractor?

On this question the boy testified as follows: "Q. Was Mr. Wommer your boss? A. Yes, sir. Q. Who did he work for? A. For Mr. Billy Palmer and Mr. Stern and his brother. Q. Who were Stern and Palmer? Who were they? A. Superintendents. Q. Who was there in charge of Mr. Wommer, if anybody, who had control over Mr. Wommer? A. His brother and Billy Palmer and Stern. Q. Who were Billy Palmer

and Stern and his brother working for? I mean to
say: Were they working for the Bell & Coggeshall
Company? Were they their superintendents? A.
Yes, sir. Q. Did those gentlemen come into the place
where you worked and have charge in that room? A.
They would walk around. Q. What would they do?
A. See if the work was done right. Q. I will ask you
to state if, while you were working for Mr. Wommer,
you did other work also for the Bell & Coggeshall
Company? Were you sent anywhere else in the fac-
tory to work? A. I was catching from the saw be-
hind his brother on Saturday. Q. Who did his
brother work for? A. Mr. Palmer. Q. You mean
Palmer, the superintendent of Bell & Coggeshall? A.
Yes, sir. Q. How long had you been working there
before you were hurt? A. A week and one day. Q.
When you were employed to work under Mr. Wom-
mer, what sort of work did they give you to do? A.
Dip the ends into the glue and put them on boards. Q.
Then what would be done with the boxes after you
dipped them in. A. Eric Lightfoot would put them
together, and Mr. Wommer would squeeze them up.
Q. Who was Mr. Lightfoot? A. A boy that worked
there. Q. Do you know whether other boys from the
factory were taken by Mr. Wommer and put to work
on that same machine while you were there? A.
The other boy that quit and I got his job, he brought
one up from downstairs and put him on it. The
Court: Who did? The witness: Mr. Wommer. The
Court: Which Wommer? The witness: The one
that run the machine. The Court: The one that em-
ployed you? The witness: Yes, sir. Q. Where did
he get the other boy? Who was the other boy work-
ing for before he got him? A. Billy Palmer. Q. In the
same factory? A. Yes, sir." On cross-examination
he stated as follows: "Q. Eddie, you were asked by
Eric Lightfoot if you wanted a job before you went
to Bell & Coggeshall? A. Yes, sir; that night. Q. Is
it not a fact that he stated to you that Mr. Wommer

wanted to employ boys? A. He asked me did I want to work, and I told him yes, and he said he could get me a job. Q. He told you Mr. Wommer wanted to employ you, didn't he? A. Yes, sir. Q. And you went to Mr. Wommer and was employed by him? A. Yes, sir. Q. And Mr. Wommer paid you? A. Yes, sir. Q. Bell & Coggeshall didn't pay you anything? A. No, sir. Q. Their men that worked for them were paid at the office, weren't they, the boys and men that worked for them? A. Yes, sir."

F. T. Ricketts, a witness for the plaintiff, testified as follows: "Q. Do you know Mr. Wommer, Charles Wommer? A. Yes, sir. Q. Did he work there at the same time you did? A. Yes, sir. Q. State how he worked there at that time, if you know, at the time you worked there. What was his business? A. He was running a squeezer and making boxes. Q. Did he have a regular job at that, or how would that be done? A. If he did not have any work there, he would go around in other parts of the mill and do work. Q. That is, Mr. Charles Wommer? A. Yes, sir. Q. What other work would he do when he did not have work there? A. Run a saw and work in the finishing gang. Q. Under whose control was Mr. Charles Wommer? A. Under Mr. Palmer. Q. Under whose control were all the men in the room where Charles Wommer worked? A. I don't know. I guess Mr. Palmer was. Q. Was he the superintendent there? A. Yes, sir. Q. I will get you to state, when men were needed on the squeezing machine, if they would be gotten out of other parts of the factory, or boys. A. Yes, sir. Q. When this squeezing machine would stop running, what became of the boys who were working on it? A. They were put around in other parts of the factory."

The proof for the defendant was, in substance, as follows: "Charles Wommer was paid so much a thousand, hired by the piece, but we often worked him the other way. For instance, we would get an

order for a car load of 5,000 boxes, and he would squeeze those boxes up, and there would be a steady run by the piece probably, and then maybe he would be there, and there would not be a half day's work for him by piece work. Then in order to keep him from going away somewhere, and to-morrow we might need him, we just put him on some other work and paid him by the day. Q. In reference to this squeezer, how was he employed A. He was employed by piece work. Q. What was his contract with reference to such help as he might use in the operation of the squeezer and in squeezing boxes? A. He had the right to hire whatever boys he wanted to, to make his own prices. Q. Did you or he pay those boys? A. He paid them.''

It was also shown that Bell & Coggeshall had an insurance policy insuring them against loss by reason of injuries to their employes, and that it reported the plaintiff's injury to the insurance company as an injury of one of its employes. It was futher shown that the company discharged Wommer, and that he was subject to the orders of his superior, both as to what he should do and how he should do it.

An ''independent contractor'' is one who is independent of his employer in the doing of his work, and may work when and how he prefers. A ''servant'' is one who is employed by another and is subject to the control of his employer. In 1 Thompson on Negligence, Secs. 579 and 629, the rule is thus stated: ''The right to control the conduct of another implies the power to discharge him from the service or employment for disobedience; and, accordingly, the power to discharge has been regarded as the test by which to determine whether the relation of master and servant exists.'' 1 Thompson on Negligence, Sec. 579, ''In determining whether the relation is that of master and servant or that of proprietor and independent contractor, the courts have sometimes taken into consideration the manner of payment;

whether payment was to be made by the day, week, month, etc., with a reservation of the power to discharge, or whether there was to be a payment by the piece or by the entire job. But the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employe. That the mere fact that the work being performed by an employe at the time he was injured was done by the piece or job—as by a payment of a stated price for each car when loaded— does not deprive him of the character of an employe, where he was a mere servant carrying out the employer's will and instructions.''

In Singer Manufacturing Company v. Rahn, 132 U. S. 518, 10 Sup. Ct. 175, 33 L. Ed. 440, the United States Supreme Court said: ''And the relation of master and servant exists whenever the employer retains the right to decide the manner in which the business shall be done as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done.'' In Bracket v. Lübke, 4 Allen (Mass.) 138, 81 Am. Dec. 694, the Supreme Court of Massachusetts, after showing that, where the power of directing and controlling the work is parted with by the employer, the relation of master and servant does not exist, said: ''On the other hand, if work is done under a general employment and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable because he retains the right and power of directing and controlling the time and manner of executing the work or of refraining from doing it if he deems it necessary or expedient.'' The subject was fully examined by the Supreme Court of West Virginia in Knicely v. West Virginia, etc., R. R. Co., 61 S. E. 811, 17 L. R. A. (N. S.) 370. In that case the person who was claimed to be an independent contractor was employed to unload lumber from cars

at a certain price per 1,000 feet. Holding that the mode of payment was not a decisive test whether the person was a servant or independent contractor, the court said: "How many conceivable instances of employment in which compensation is determined by the amount of work done, instead of by the time employed, are there? Hundreds of thousands of 'piece workers' in factories, coal miners paid by the bushel, railway engineers paid according to mileage, and thousands of others. If that made an employe an independent contractor, it would be possible for employers to farm out all their work, and with it their liability, by a very simple operation. Nor is it more than a mere circumstance, having more or less probative force, that the general employer has not, or has delegated, the power to hire and discharge the men."

The later cases do not make either the mode of payment or the right to discharge, or the power to employ assistants or pay them, the decisive test whether the person is an independent contractor or a servant, but look to the broader question whether he was in fact independent or subject to the control of the person for whom the work was done, as to what should be done and how it should be done. Applying this test here, we are of the opinion that Wommer was simply squeezing boxes for the Bell & Coggeshall Company in their factory with their machinery as directed by their foreman, and was paid for his services in squeezing boxes, not by the day, but by the number of boxes he squeezed. The fact that he was paid according to the amount of work done, and was given the right to hire a boy who assisted him, in no manner militates against the evidence that he was under the control of the foreman. He was in no sense an independent contractor. He was to squeeze such boxes as they directed him to squeeze, and to do it when they directed him to do it. The mode of his payment was simply for the convenience of the parties. The pay of a teamster is often regulated

by the number of miles he runs; but this would not make the teamster, if under the control of the employer, an independent contractor, although he selected his own helper and paid him. The squeezing of the boxes was only one step in the process of their manufacture. One employe did one thing, another did another thing until the finished box was the result. The squeezing of the boxes by Wommer was simply one of the intermediate steps between the beginning and the end. The manufacture of the box was the thing that the employer was doing, and, from the beginning of the box to the end, all the persons who worked on it were under the control of the employer. Without the power of control in the employer, the business could not reasonably be conducted. Wommer was as fully under the control of the foreman of the factory while squeezing boxes as when running the saw or doing other work about the factory.

We therefore conclude that Wommer was not an independent contractor, but a servant of the Bell & Coggeshall Company, and that it was liable to the plaintiff for his negligence, if he was negligent. The defendant introduced much proof on the trial tending to show that the boy was not hurt as he testified, and that his injury was due to his own fault; but these matters are for the jury under proper instructions.

Judgment reversed, and cause remanded for a new trial.