No. 20,951.

TONI MAUGHLELLE, *Appellee*, v. JAMES H. PRICE et al. (THE J. R. BURNETT COAL & MINING COMPANY, *Appellant*).

SYLLABUS BY THE COURT.

1. LEASE—*Coal Mine—Lessee an Independent Contractor*. A contract in form a lease of a certain coal mine and its equipment examined and found to leave the lessees in the attitude of independent contractors respecting the operation of the mine.

2. SAME—*Leased Coal Mine—Injuries to Workman—Lessee An Independent Contractor—Lessor Not Liable*. The record failing to show the work in which the plaintiff was engaged to have been under the direction, execution or control of the lessor company, the judgment against it must under section 4 of the workmen's compensation act (Laws 1913, ch. 216) be held erroneous.

Appeal from Crawford district court; CHARLES S. DENISON, judge *pro tem*. Opinion filed December 9, 1916. Reversed.

*John P. Curran*, of Pittsburg, *A. H. Skidmore*, and *S. L. Walker*, both of Columbus, for the appellant.

*F. B. Wheeler*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued J. H. Price & Sons and J. R. Burnett under the workmen's compensation act by reason of an accident in a coal mine where the plaintiff was working. Afterwards the J. R. Burnett Coal & Mining Company was

substituted for J. R. Burnett, defendant, and from a judgment in favor of the plaintiff against both defendants the Burnett company appeals. The plaintiff alleged, among other things, that on or about the 31st day of January, 1912, the J. R. Burnett Coal & Mining Company, as lessor and principal, entered into a contract with the James H. Price & Sons Company, as lessees and contractor, whereby the Prices were to mine certain coal pursuant to an agreement set out as an exhibit, and that in pursuance of this contract and under the terms thereof, the Prices began operating a shaft; that a part of the business of the Burnett company was to contract for the removal of coal and to buy the outfit of strip pits and other shafts and buy and sell coal on the market; that by the terms of the contract the Burnett company was liable.

The plaintiff insists that the decision in *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120, controls.

The coal company contends that under the workmen's compensation act the principal and subcontractor can not be sued jointly; that the Pottorff decision does not apply; that the coal company was served with no notice of injury or claim for compensation, and no waiver was shown, and that this defendant is not liable on any theory. The claims of counsel as to what the evidence was are so diverse that the transcript itself has been carefully examined, with the result that aside from the contract, the only evidence found touching the relation of the two companies is that the Prices operated the mine under the contract, the coal company exercising no control thereover whatever, and that the miners were paid by Price & Sons.

The contract is in form a lease covering the mine and its entire equipment, the work of mining to be prosecuted continuously and industriously from the first day of February, 1912, until all the workable or minable coal should be taken out. Lessees were to furnish all posts, ties, caps and mine timbers and all other necessary materials to carry on a successful mine operation; to pay all costs, charges and wages in whatsoever nature involved in the operation of the mining; to work the mine in compliance with the mining laws of the state; to permit the lessor or its agents to inspect and examine the equipment and mine at any and all times, the development of the mine and ground, the work to progress on lines estab-

lished by the mining engineer of the lessor; the mine to be surveyed twice a year and blue prints thereof furnished; the lessee to permit an examination of its books and papers pertaining to weights and the daily bulletin from which miners' wages were paid, for the purpose of ascertaining the total output. The mine was to be turned back to the lessor in good condition, ordinary wear and tear of equipment excepted, the lessee to maintain the same at its own cost, replace parts broken and not to suffer any removal thereof except for repairs, and to employ only competent men to handle the machinery. The lessees were to purchase six mules from the lessor and to accept and pay for all feed, props and mine timber on hand February 1, 1912, at actual cost to lessor, the mules to be paid for in monthly installments on a basis of ten per cent of the net earnings of the lessee. All coal taken out or removed was to be loaded in railroad cars on tracks at the mine on orders of the lessor and subject only to its disposition—

"One of the principal objects of this agreement on the part of the lessor company being to secure the entire output from this mine, it being expressly understood that the lessees are not to dispose of, or sell any coal in wagon-load lot mined from said land, except to employees as per contract with the U. M. W. of A. and said lessees shall pay the difference between the U. M. W. of A. contract price per ton and the price per ton paid to lessees by lessor under this agreement."

The lessee was to furnish clean marketable coal at $1.25 a ton, payment to be made on or before the 20th of each month for all coal furnished to lessor the preceding calendar month.

"Cash shall be advanced to enable the lessee to meet pay-rolls as per contract with U. M. W. of A., but no money will be advanced in excess of the value of the coal mined on the date such advance is made."

The lessee was to have equal running time with other mines mentioned or that might be operated with the lessor during the life of the contract, but unless the lessee should furnish clean, marketable coal the running time should be reduced according to complaints. No assignment was to be made or anyone permitted to come in under the lease except upon the written consent of the lessor. The tenth paragraph was to the effect that the lessee should be responsible for all damages of every nature whatsoever done to persons or property during the performance of the work or arising from any negligence

of the lessee or any trespass by it or its employees or agents, the lessor in no wise to be responsible for any claim, expense and costs in connection with such damages or injuries. In case the wage contract of district No. 14 should be altered and the cost of mining should thereby be changed the price for coal under this agreement was to be adjusted so as to conform to such change. Any refusal of the lessee to comply with any provision of the agreement for five days after his attention should be called thereto in writing by the lessor was to authorize a termination by the latter of all rights of the lessee upon ten days' written notice.

"But such termination shall not relieve the lessee from any obligation hereby imposed upon it except that of further prosecuting the mining, and nothing in this paragraph shall modify the provisions of paragraph 'Tenth'. "

It was further agreed, among other things, that James H. Price should give his personal supervision to the mine and the operation thereof during the term of the agreement. Mention was made of a former lease of a part of the mine called the Curran-Patmor part, which lease was to be respected by the parties to this contract. Finally it was stipulated that all the property placed on the premises by the lessees should be security to the lessor for any loss suffered on account of any violation of the terms of the contract by the lessee and a lien thereon was expressly granted as if the mortgage extended thereover.

The trial court treated the contract in question as evidence of a partnership and instructed the jury that if they should find that the firm of Price & Sons was operating the mine under and by virtue of the contract, "then and under such circumstances, if they exist, the defendant, The J. R. Burnett Coal & Mining Company, will be deemed to have reserved some control over the work and workmen in said mine and therefore would likewise be subject to the provisions of the Workmen's Compensation Law along with its codefendants, said partners."

In another instruction they were told that under such circumstances the Burnett company would be jointly liable along with the defendant firm of J. H. Price & Sons Coal Company for such injury. It is claimed that Price & Sons were independent operators or contractors and according to all the

authorities whether they were or not depends upon who had the right of control over the work. This was made plain in *Pottorff v. Mining Co.,* 86 Kan. 774, 122 Pac. 120, approving the definition of the term "independent contractor" as " 'one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to result of his work' ", and it was said that "an independent contractor represents the will of his employer only in the result of his work and not in the means by which it is accomplished," and " 'the proprietor may make himself liable by retaining the right to direct and control the time and manner of executing the work.' " (p. 781.)

In a footnote to *State, ex rel. Virginia & R. L. Co. v. District Court,* 128 Minn. 43, in 7 N. C. C. A. 1076, citing numerous authorities, several of them involving cases somewhat similar to the one now under consideration, it is said that, "The principal element which controls in determining the relationship is apparently the extent to which the one undertaking the work is subject to or free from the control of the person for whom the work is done," and it is pointed out that the right and not the fact of control is the determining feature, and that the test is the same in compensation as in other cases.

The company had a right to lease the mine and its equipment and provide that the coal should be taken out in a proper manner and delivered to the lessor or its order—developing the underground work in directions desirable to the owner as indicated by its engineer. It had a like right to provide that a breach of contract should work a termination of the rights of the other party and to require such party to respond for all damages incurred in the work. We find nothing in the contract which authorizes the lessor to say aught as to who shall be employed in the mine, what hours shall be observed or what wages paid, or dictate in any manner save to require compliance with the plain terms of the agreement by virtue of which the lessee is to mine and deliver coal to the lessor or its order. In the Pottorff case the law stated in *Railway Co. v. Lossley,* 76 Kan. 103, 90 Pac. 990, was quoted to the effect that the fact that the one who engages a contractor to produce a given result " 'possesses a limited or partial control will not

entail such a liability if the contractor is still left free to exercise his own will generally respecting. the methods and means of accomplishing the result.' (Syl. ¶ 5.)" (p. 782.)

The contract contains nothing to indicate a partnership to share mutually in the profit or. loss of an enterprise. It is either what it purports to be or else it is the creation of the relation of employer and employee, in which case the lessee was to act for, represent and to be responsible to the lessor in the mining operations. But there is nothing in the instrument tending to show any thought or desire to form such a' relationship. Several features relied on in the Pottorff case are wanting here, and there is not present here as there a manifest purpose to cloud with words a meaning to be extracted. by the searching eye of the law in spite of such purpose. It was there pointed out that the agreement could be annulled at the pleasure of the company with or without default of the other party; that the owner might work the mines to their capacity, restrict production or stop the work altogether; that the company owned a store and the empolyees were to purchase all their merchandise supplies and powder thereat. These features are not found in the present contract. Much stress was laid also on the provision in that case that the lessee must quit should the work of the mines not be "agreeable" to the company, and that the company might operate the mines at full capacity or shut down entirely, according to its own requirements and demands —features that are not in the contract before us. From the contract itself and from the meagre portion of evidence abstracted and from the entire transcript nothing can be deduced to indicate that any miner employed by Price & Sons had any reason to believe or even suspect that he was working for the Burnett Coal & Mining Company, and we are unable to find anything to justify the conclusion that the company had any authority over or responsibility for such employees.

"It is not essential that one who engages a contractor to produce a given result should reserve, or should interfere and take, complete or exclusive control over all features of the work to render him liable as a master of the contractor's servants, but the fact that he possesses some control will not necessarily entail such liability. No matter if the control go to the extent of conditioning the work in many aspects, still if the contractor is left free to exercise his own will generally respecting

methods and means he is independent and the employer is not the master of his servants." (*Railway Co. v. Loosely,* 76 Kan. 103, 121, 90 Pac. 990.)

In a note to *Messmer v. Bell & Coggeshall Co.,* 133 Ky. 19, in 19 Ann. Cas. 1, it is stated:

"Where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor. . . . The mere fact that the employer reserves a right to supervise or inspect the work during its performance does not make the employee a servant, where the mode and means of performance are within the control of the employee." (pp. 12, 14.)

In *Laffery v. Gypsum Co.,* 83 Kan. 349, 111 Pac. 498, the exception to the rule holding an owner liable when the work is intrinsically or inherently dangerous, discussed and applied in *Railroad Co. v. Madden,* 77 Kan. 80, 93 Pac. 586, was again considered at length and numerous authorities cited. It was said, however, (p. 362) that in the absence of legislation upon the subject the courts had not hitherto held as a matter of law that mining is so inherently dangerous as to make the owner liable for the negligence of an independent contractor, where it is not shown that the mine was unsafe when the contract was made or that the owner reserved some control of its operation. From this two members of the court dissented (p. 363) on the ground that mining is intrinsically dangerous. A similar holding and an expression by special concurrence in line with the dissent referred to may be found in *Nelson v. Cement Co.,* 84 Kan. 797, 115 Pac. 578. These decisions were rendered in 1910 and 1911, respectively. In 1913 the legislature by section 2 of chapter 216 of the Laws of that year, amending the original compensation act, referred, among other things, to a mine and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, "each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workman engaged therein are inherent, necessary, or substantially unavoidable."

The views of counsel as to the effect of this declaration have, since the submission of the case, been requested, received and considered, also their further views as to the matter of claim

for compensation and the effect of section 4 of the original compensation act (Laws 1911, ch. 218), invoked by the plaintiff. Whether or not the exception would apply and the lessor as well as the lessee be liable were this an action for damages on account of negligence, need not be considered. This is an action for compensation, the question of negligence not arising. The amended petition alleged that J. H. Price in looking after the plaintiff and attempting to settle with him was acting for the Burnett company. After a demurrer had been overruled an answer was filed consisting of a general denial duly verified thus placing on the plaintiff the burden of showing the alleged agency of J. H. Price, of which there was no proof except the contract itself, the effect of which has already been determined. Otherwise there was no allegation or proof of any claim for compensation made to the Burnett company. The failure to plead want thereof might well be held not to amount to a waiver of such claim as contended by the plaintiff, but a decision on this point is rendered unnecessary by the statutory provision relied on—section 4 of chapter 218 of the Laws of 1911. This provides that when any person therein referred to as principal undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person, referred to as the contractor, for the execution of the whole or any part of such work the principal shall be liable to pay to any workman employed in execution of the work any compensation under the act which he should have been liable to pay if that workman had been immediately employed by him; that when compensation is claimed or proceedings are taken against the principal, then in the application of the act—

"References to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed."

Other provisions as to liability over and questions of pleading are made and subdivision "d" is as follows:

"This section shall not apply to any case where the accident occurred elsewhere than on or in, or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in, or about the execution of such work under his control or management."

Whatever may be the basis of the liability of the owner in certain cases involving employment inherently dangerous, whether imputed agency, public necessity or other ground, real or fictitious, this statute attaches no liability for compensation to one who is not in the execution, control or management of the work wherein the injury occurs.

Finding nothing in the record showing such execution, management or control by the Burnett company, the judgment against this defendant must be reversed.