[Civil No. 2377. Filed January 27, 1926.]

[242 Pac. 866.]

## JAMES H. MAXEY, Appellant, v. CHARLES J. JOHNSON, Appellee.

1. MASTER AND SERVANT—EMPLOYEE OF INDEPENDENT CONTRACTOR MUST LOOK TO HIM FOR COMPENSATION.—Employee, working for independent contractor, must look to such independent contractor and not to original contractor for compensation.

2. MASTER AND SERVANT—"INDEPENDENT CONTRACTOR" EXERCISES CONTROL OVER MEANS AND METHODS OF WORK.—If one doing work for another may adopt such means and methods as he chooses to accomplish the result, he is not an employee but an "independent contractor"; test being whether one doing work has right to control work.

3. MASTER AND SERVANT — PARTIES CONTRACTING TO GRADE ROAD AT SPECIFIED AMOUNT PER CUBIC METER OF EARTH REMOVED, HELD EMPLOYEES AND NOT INDEPENDENT CONTRACTORS.—Parties contracting to grade road at specified amount per cubic meter of earth removed *held* employees and not independent contractors, where contract provided for no definite piece of work, no provisions for measuring work as it progressed were made, contractees were not furnished with plans or specifications, all means necessary to do work were furnished by contractor, and contractees were financially irresponsible and not identified by name, materials for work being charged to "M. L. Camp No. 48."

4. MASTER AND SERVANT—WHETHER ONE IS EMPLOYEE QUESTION FOR COURT, WHERE TERMS OF CONTRACT ARE NOT IN DISPUTE.—Where, in action for services, terms of contract are not in dispute, and it is free from ambiguity, whether plaintiff is employee of defendant is question for court.

See (1) 31 C. J., p. 473, n. 24; p. 474, n. 28, 29, 30; 39 C. J., p. 145, n. 71. (2) 31 C. J., p. 474, n. 32; p. 475, n. 34; 39 C. J., p. 35, n. 23. (3) 39 C. J., p. 204, n. 29. (4) 39 C. J., p. 54, n. 72.

1. See 14 R. C. L. 79.
2. Test as to whether person is independent contractor or employee, see notes in 65 L. R. A. (N. S.) 445; 17 L. R. A. (N. S.) 371; 19 A. L. R. 227. See, also, 14 R. C. L. 67.
4. See 14 R. C. L. 78.

APPEAL from a judgment of the Superior Court of the County of Yuma. Fred L. Ingraham, Judge. Affirmed.

Messrs. Robertson, Lindeman & Campbell, for Appellant.

Mr. Henry C. Kelly, for Appellee.

ROSS, J.—Charles J. Johnson sued James H. Maxey for services rendered in railroad grading work. In one count he alleged his agreed wages to be five dollars a day, less board, and in another count he alleged his services to be of the reasonable value of five dollars a day, less board. A second cause of action, stated in the same way, is upon an assigned account from Jon Jurkovich. The defendant, who had the general contract for such grading, denies plaintiff and his assignor were in his service, and contends they were working for one Martin Laurin and his associates, who had undertaken as independent contractors to grade a segment of said roadbed. The trial was had before a jury, and resulted in a verdict for the plaintiff, upon which a judgment was entered against defendant. He appeals.

A careful and painstaking examination of the record satisfies us that there is no material discrepancy in the testimony as to the facts. It is the contention of defendant that these facts clearly establish that Laurin and his associates were independent contractors, and that the services for which suit was brought were for them, and that they, and not defendant, owe plaintiff; whereas plaintiff contends the facts show plaintiff and his assignor were the employees of defendant, and that the work and labor was rendered for defendant and on his account.

It is not necessary to set out in detail the assignments of error, but in one form or another they raise the question of the sufficiency of the evidence to sustain plaintiff's allegation of employment by defendant.

The defendant had taken a contract from the Mexican government to grade seventy kilometers of a roadbed for a railroad being constructed in the Republic of Mexico. The plaintiff and his assignor were employed in doing grade work in such construction, at what is designated by the witnesses as camp 48. The question is whether the operations at this particular camp were being carried on by defendant or by independent contractors. The facts in relation thereto were testified to by defendant and his superintendent and by no other witnesses; the other parties to the contract not being present, nor did they testify by deposition. The contract was not written. The facts as detailed by defendant and his superintendent briefly are: That about October 1, 1923, one Martin Laurin saw defendant at Calexico, California, and made arrangements for himself and some associates (ten of them, all told) to do some grading at camp 48, for which defendant agreed to pay them $1.04 per cubic meter for earth and rock removed from a cut required to be made at that point, and one cent per cubic meter for a haulage when the haul was for a distance of —— meters (distance not given). The defendant was to furnish everything, including tools, machinery and camp equipment, also powder, caps, gasoline, food and provisions; the tools, machinery and camp equipment to be returned when through with, and the rest of the stuff to be paid for at cost plus 10 per cent, the 10 per cent added to the cost being to cover expense of delivery at camp. The defendant retained the right to terminate the contract at any time and to judge whether Laurin and his

associates were doing the work properly. The latter were to furnish nothing except "the labor." It was not definitely established that they had been furnished any plans or specifications to guide them. Defendant in that regard said he had plans and specifications for the entire job, furnished him by the Mexican government, in his office at Calexico, to which Laurin or any of his associates might have had access, but declined to say the men on the ground forty miles away, were furnished these, or had them available for inspection or use in connection with their work. These plans and specifications were changed or altered, after Laurin and associates commenced work, so as to shift the line of roadbed and increase the yardage of rock and earth to be removed.

The employment of plaintiff and his assignor extended over the period from October 9, 1923, to January 3, 1924, or for 77½ days, and defendant knew they were so engaged. On the last-mentioned date the Mexican government stopped all work, and thereafter time slips were made out by Martin Laurin in favor of plaintiff and his assignor against defendant showing a balance of $285 due each of them. These slips were introduced in evidence. The groceries, powder, caps, etc., were billed to "Martin Laurin Camp No. 48."

The time of plaintiff and his assignor, and others working at camp 48, was kept by a Mr. Lee, one of the workmen at such camp. There was testimony to the effect that when employees quit work they were given slips of their time, made out by Lee, and signed by Laurin, directed to Maxey, in the same form as the ones sued on, and that Maxey paid them. Maxey explained that he paid such employees by special arrangement, and not as employer. It was also in evidence that Maxey, after construction work was stopped, being accosted by plaintiff and his assignor

and others employed at camp 48 for a settlement, claimed he was unable to settle with them because he had not had a settlement with the Mexican government.

The question as to when a party is an independent contractor has often been before the courts, but has most frequently arisen in tort cases in determining who was liable for the wrong charged; the rule in such cases being that, if the contractee is independent, he is liable, but, if he is only an employee, his employer is liable. The relationship by analogy gives rise to corresponding duties and liabilities on contracts, so in this case, if it appears from the facts that Laurin and his associates were independent contractors, the plaintiff and his assignor would have to look to them for their compensation. If, however, Laurin and his associates were only employees of defendant, doing certain of his work and engaged Johnson and his assignor to assist them, with defendant's knowledge and consent, then defendant would be liable to compensate plaintiff and his assignor.

Whether one doing work for another is an employee or an independent contractor is often a most difficult question to decide, as may be seen from an examination of the decisions. It is not possible to formulate a definition of that status that will fit every case in which that relationship is involved.

"Every case must depend on its own facts. Ordinarily no one feature of the relation is determinative, but all must be considered together." Honnold on Workmen's Compensation, § 66.

We have said that "one who exercises an independent employment, and contracts to do a piece of work according to his own method, and without being subject to the control of an employer, save as to the

results of the work," is an independent contractor (*Swansea* v. *Molloy*, 20 Ariz. 531, 183 Pac. 740; *Alhberg* v. *Louise Mining & Development Co., ante,* p. 313, 241 Pac. 510), and this definition is perhaps the one most frequently quoted.

The idea of control is embodied in the above definition of an independent contractor, and all the courts agree that, while there are other tests, the master test is the right to control the work. If under the contract the party for whom the work was being done could not only prescribe the result but the means and methods to be used to obtain such result, the one doing the work would be an employee; but, if the one doing the work may adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor. But, as is said in *Kelley's Dependents* v. *Hoosac Lumber Co.,* 95 Vt. 50, 113 Atl. 818:

"The truth is that the ultimate test depends upon divers considerations of varying importance, all of which must be considered, and no one of which is determinative; and it is extremely difficult, if not impossible, to make a statement of definite facts by which the status of a given person can unfailingly be determined."

It is significant that Laurin and associates were to furnish nothing except the manual labor. They were dependent upon Maxey for everything necessary to do the grading, as also for their food, and at his whim or pleasure these could be taken from them. They could be discharged as readily as if working from day to day. In fact, that was what they were doing, only their pay was not measured by the day but by the cubic meter.

The contract proved does not show when or how or by whom Laurin and associates were to be paid, nor any definite specific piece of work to be done.

A rock cut is referred to by witnesses, but whether
the contract was for the entire cut and limited to it,
or included other grading is not shown. No provi-
sion for measuring the work as it progressed, or
for advances, is shown. Such a status leaves the
contractee, to say the least, in a very precarious
situation. He cannot know how long his employment
will last. He has no control of the "means" neces-
sary to do his work, as they are all furnished and
may be changed or entirely taken from him at any
time. His situation is anything but one of indepen-
dency; it is one of servile dependency. These so-
called "independent contractors" had no way of get-
ting to or from camp 48 except in conveyances of
defendant, and, as is evident from their very iso-
lation, no other employment than the one on this
grade. They were financially irresponsible, and for
this statement we find justification in the following
circumstance: On Christmas Day they went from
camp 48 to Calexico to defendant's office, some forty
miles away, for the purpose of getting their pay.
They met with no success in that respect, but it ap-
pears they were without money or means to buy
food and were able to get back to camp 48 only
through the free transportation furnished them by
defendant. Notwithstanding the impecuniosity and
irresponsibility of these men, with the knowledge of
defendant, they employed plaintiff and his assignor,
and defendant accepted their labors and made no
arrangement by which their wages could be paid, as
by weekly or monthly payments upon estimates or
measurements as the work progressed.

Another significant fact is that the so-called "inde-
pendent contractors" are not identified by name.
There were ten of them and only Laurin and Lee were
designated by name. The provisions and materials

furnished were not charged to Laurin and Lee, or either of them, but to the "Martin Laurin Camp No. 48," a designation natural enough to identify the destination of such provisions and materials, but hardly sufficient to establish the status of an independent contractor or debtor.

If a party who has thus contracted to do a piece of railroad grading can assign a segment thereof to a loosely associated group of laborers without financial responsibility to do the work and permit them to employ needed help, he furnishing everything, and avoid paying for labor on the theory that it was performed for an independent contractor, it is possible for such party, not only to "farm out" all of the seventy kilometers of such construction, but with it all his liability for labor thereon.

While perhaps none of the various elements entering into and characterizing the contract between defendant and Laurin and his associates alone would constitute it an employment or service, and not an independent contract, we think when all of the circumstances are taken together they do. *Bristol & Gale Co.* v. *Industrial Com.,* 292 Ill. 16, 126 N. E. 599; *Messmer* v. *Bell,* 133 Ky. 19, 19 Ann. Cas. 1, and note, 117 S. W. 346. In the Bristol case and in the note to the Messmer case may be found examples of many cases wherein the question has been discussed and decided. None of them are on all-fours with the facts in this case, but we deduce therefrom the principle that there must exist some actual independency on the part of the contractor, and that a mere shadowy or superficial appearance of such is not enough to take from the employer responsibility for labor and services actually rendered for his use and benefit on the claim or pretext of an independent contract.

There being no dispute as to the terms of the contract in this case, and it being free from ambiguity, the question whether the relation was that of employee of defendant was one for the court and might well have been ruled without submission to the jury. *Messmer* v. *Bell, supra* (note at pages 6 and 7, 19 Ann. Cas.).

In this view of the case it becomes unnecessary to consider the assignments based upon erroneous instructions, and for that reason we do not consider such assignments.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.