763 P.2d 262

**Patricia Dawn LUEDTKE,**
**Plaintiff/Appellant,**

**v.**

**ARIZONA FAMILY RESTAURANTS OF TUCSON, INC., dba The Ice Cream Man, an Arizona corporation; and Vernon Lee Leighton, an unmarried man, Defendants/Appellees.**

No. 2 CA–CV 87–0298.

Court of Appeals of Arizona, Division 2, Department A.

May 31, 1988.

Review Granted on Issues Nos. 1 and 4, and Denied on Remaining Issues Nov. 8, 1988.

Alpert, Fein & Hameroff, P.C. by James
A. Fein, Tucson, for plaintiff/appellant.

Jones, Skelton & Hochuli by Edward G.
Hochuli and William J. Schrank, Phoenix,
for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from a defense verdict in a wrongful death action. The plaintiff is the mother of the deceased, Dwayne Luedtke, Jr., who was six years old at the time of his death. The suit was brought against the appellees Arizona Family Restaurants, dba The Ice Cream Man, and Vernon Leighton, the lessee and operator of the ice cream truck which was owned by Arizona Family Restaurants.

On the day of the accident, Vernon Leighton was driving the ice cream truck in a neighborhood in which the Luedtkes resided. He was hailed by the little boy who was across the street standing with his mother. Leighton parked his ice cream truck approximately two and one-half feet from the curb and turned on the left hand signal. The little boy went across the street to the ice cream truck by himself while his mother stood on the other side watching. The child purchased a popsicle from Leighton, walked in front of the vehicle, appeared to look in both directions, and then walked out into the street. He was struck and killed by a car driven by Margaret Crickett.

Leighton testified that he did not work for The Ice Cream Man, but rather that he was self-employed and that he was his own boss. Leighton leased a truck from The Ice Cream Man for $16.60 per day or $100 per week. The van was equipped with a music box used to attract the attention of potential customers. Leighton was responsible for purchasing his own ice cream and his gasoline. An individual vendor, such as Leighton, was required under the lease agreement to keep his truck clean and to purchase all ice cream from The Ice Cream Man. Leighton had no supervisor. He was given a suggested route but he was not required to adhere to that route and could have gone anywhere in Tucson. The Ice Cream Man did not share in any of Leighton's profits or have the right to con-

trol the manner or method in which the ice cream products were sold.

The trial court directed a verdict in favor of Arizona Family Restaurants, and the case was submitted to the jury only against the defendant Leighton. Further facts will be set forth as they relate to the issues under discussion.

Plaintiff contends the trial court erred in the following ways: (1) directing a verdict in favor of Arizona Family Restaurants on the issue of respondeat superior; (2) directing a verdict in favor of Arizona Family Restaurants on the issue of independent liability; (3) refusing to direct a verdict in favor of the plaintiff on the issue of contributory negligence; (4) failing to admit evidence of insurance; (5) failing to give an attractive nuisance instruction; (6) giving an instruction regarding an open and obvious danger; (7) failing to give an instruction regarding negligence per se; (8) disclosing to the jury that defendant Leighton was deceased; and (9) denying plaintiff's motion for a new trial.

## RESPONDEAT SUPERIOR

■ Plaintiff contends that the trial court erred in directing a verdict in favor of Arizona Family Restaurants on the issue of its liability under the doctrine of respondeat superior. She points to the following evidence to show that there was a jury issue as to Arizona Family Restaurants' liability for Leighton's acts: that the Arizona Family Restaurants assigned its drivers a route; required them to keep their vehicles clean; required them to purchase all supplies from the company; carried insurance on the vehicles; installed music boxes; placed decorative markings on the trucks; and performed all maintenance and repairs.

Whether considered separately or together, these facts do not raise an issue as to the vicarious liability of Arizona Family Restaurants. The ultimate test of whether one is acting for another as a servant or independent contractor is whether he is subject to the other's control or right to control the manner in which he reaches the desired result. *Consolidated Motors v. Ketcham*, 49 Ariz. 295, 66 P.2d 246 (1937). An independent contractor exercises control over the means and methods of work. *Maxey v. Johnson*, 29 Ariz. 452, 242 P. 866 (1926). There is no evidence in this case that Arizona Family Restaurants had any control over the details of Leighton's work. He could work whatever hours he wanted and, even though he had a designated area, he could have gone anywhere in Tucson. He was free to employ any means that he desired in selling his ice cream. The fact that he had to buy the ice cream from Arizona Family Restaurants shows no right of control over the details of Leighton's work. The fact that the vehicle is owned and maintained by American Family Restaurants does not show any right of control over the details of Leighton's work. That Arizona Family Restaurants carries liability insurance on the vehicle does not show any right to control. As owner of the vehicle, Arizona Family Restaurants was required by Arizona's Financial Responsibility Act to carry a policy of liability insurance. See A.R.S. § 28–1233.[1]

## INDEPENDENT LIABILITY

■ Plaintiff contends that the trial court erred in granting a motion for directed verdict in favor of Arizona Family Restaurants on the issue of independent liability. Plaintiff relies on the case of *Wilson v. Good Humor Corporation*, 757 F.2d 1293 (D.C.Cir.1985). In that case the court held that an ice cream company could be liable under the "peculiar risk" exception to the general rule regarding torts of independent contractors. This doctrine is found in Restatement (Second) of Torts § 413 (1965) which states:

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject

---

1. And see also, A.R.S. § 28–1252(6) which exempts from the requirements of the Financial Responsibility Act a motor vehicle rented without a driver meeting the requirements of A.R.S. § 28–324.

to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

We do not find the *Wilson* case to be on point. In *Wilson* the evidence was that Good Humor had, until 1980, maintained a traditional employer-employee relationship with its sales personnel. It owned and maintained its ice cream trucks and employed drivers to sell its products. During this period Good Humor recognized that curbside sales of ice cream created special hazards for its customers, especially children. Accordingly, the company conducted a vast safety program including on-site safety training, safety bulletins, periodic slide shows, and the circulation of a general safety manual. The Good Humor employees were admonished to refrain from selling in locations that required customers to cross busy roads and, in any event, to assist children in crossing the street. The evidence also established shortly before the subject action Good Humor had changed its structure so as to employ independent contractors to sell ice cream and it dropped its safety programs and bulletins. However, Good Humor neither warned its independent contractors of the known peculiar risk nor took any safety precautions whatsoever. In holding Good Humor liable, the court expressly and emphatically stated that its holding was based on Good Humor's specific knowledge as evidenced by its prior safety practices and the peculiar facts of that case. The holding in *Wilson* was predicated upon the unusual circumstances surrounding Good Humor's recent conversion to an independent contractor operation, its detailed knowledge of the special risk to children involved in curbside ice cream vending and its refusal to take any steps aimed at showing that special precautions had been taken to guard against those risks.

The trial court did not err in directing a verdict on the issue of independent liability in this case.

## CONTRIBUTORY NEGLIGENCE

The trial court instructed the jury on the effect of the contributory negligence, if any, of both the plaintiff and the deceased. The plaintiff contends the trial court erred in allowing the jury to consider evidence and in denying her motion for a directed verdict on the issue of contributory negligence. We do not agree.

As far as the deceased is concerned, there is evidence that he looked both ways prior to going out in the street. The fact remains that there was an automobile to be seen if he had exercised a proper lookout. The fact that the deceased was only six years old at the time of the accident does not, as a matter of law, foreclose the possibility that he was contributorily negligent. The decedent's young age only means that his conduct is to be judged according to that of a reasonable child of similar age, intelligence and experience under the circumstances. *See First National Bank of Arizona v. Dupree,* 136 Ariz. 296, 665 P.2d 1018 (App.1983); *Ruiz v. Faulkner,* 12 Ariz.App. 352, 470 P.2d 500 (1970). The negligent conduct of the child can be used by the trier of fact to offset or reduce the damages being claimed by the wrongful death statutory beneficiaries. *Spillios v. Green,* 137 Ariz. 443, 671 P.2d 421 (App. 1983).

As for the plaintiff, there remained a jury question as to her negligence. In particular, that question was whether she should have permitted her son to cross the street by himself, while fully aware of the fact that cars travel too fast on the street. Furthermore, it appears from the evidence that she did not watch him at all times as he was crossing and may have prevented the accident had she done so.

## ATTRACTIVE NUISANCE

The trial court refused to give plaintiff's instruction on attractive nuisance and instead gave the following instructions:

"A possessor of land is subject to liability for physical harm caused to its invitees by a condition on the land if, but only if, he:

A. knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and;

B. should expect that such invitees will not discover or realize the danger or will fail to protect themselves against it, and;

C. fails to exercise reasonable care to protect such invitees against the danger. In the context of this case, 'land' includes the ice cream truck and the ingress to it and egress from it.

An owner or possessor of property is not liable to invitees for physical harm caused to them by any condition on the land whose danger is obvious to the invitee, unless the owner or possessor should anticipate the harm despite such knowledge or obviousness.

\*   \*   \*   \*   \*   \*

Where children are involved, if a person knew or should have known that the presence of children was expected, such person is bound to anticipate it and exercise reasonable care to avoid injuring them; and conduct which may be careful in dealing with an adult may be careless in dealing with a child, and if the presence of children is anticipated, the care required to be exercised is such as is reasonable, having in view the probability that children, due to their youth, will not discover the dangerous condition or realize the risk involved by reason of such danger."

Plaintiff contends that the failure to give her instruction on attractive nuisance was error. We do not agree. The doctrine of attractive nuisance applies to trespassing children. It was developed to alleviate the hardship of the common law rule that the owner or occupier of land only owes a duty not to willfully injure a trespasser. Children who because of their immaturity, may not realize certain dangers are excepted from the general rule. The instruction given by the court covers the standard of care that would be owed to any child under the doctrine of attractive nuisance and plaintiff was not harmed by the giving of the instruction. We do not approve, however, of the concept of the duty of care which both parties in this case advocated below, that is, the theory that the standard of care of the vendor is based upon his status as an owner or occupier of land. Such characterization can lead to the giving of inappropriate instructions such as the "open and obvious" instruction of which the plaintiff complains. Clearly the vendor is not an owner or occupier of land.

Various state jurisdictions have struggled with how to characterize the duty of street vendors to children. See Annot. 84 A.L.R.3d 826 (1978). Some authorities attach the label "Pied Piper" to the body of case law imposing liability in these situations. Prosser and Keeton on Torts, § 33 at 200 (5th ed. 1984); *Sidders v. Mobile Softee, Inc.*, 19 Ohio Op.2d 446, 184 N.E.2d 115 (App.1961). As was noted in *Neal v. Shiels, Inc.*, 166 Conn. 3, 347 A.2d 102 (1974), the use of this name is unfortunate because it implies that liability necessarily is based upon some special exception to common law negligence and because it creates the impression that courts have followed a unified approach. Some jurisdictions have appeared to adopt special rules. For example, in *Schwartz v. Helms Bakery Limited*, 67 Cal.2d 232, 60 Cal.Rptr. 510, 430 P.2d 68 (1967), the court extended the business invitee rule as was done here by the trial court.

We believe the best approach is that of the court in *Neal v. Shiels, Inc.*, supra; the principles of common law negligence are sufficient. The ultimate test of the existence of a duty to use care is found in the forseeability that harm may result if such care is not exercised. The test is whether the ordinary person in the defendant's position, knowing what he or she knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result.

In accord with this principle is Prosser and Keeton, supra, at 199:

"The duty to take precautions against the negligence of others thus involves merely the usual process of multiplying the probability that such negligence will occur by the magnitude of the harm likely to the result if it does, and weighing the result against the burden upon the defendant of exercising such care. The duty arises, in other words, only where a reasonable person would recognize the existence of an unreasonable risk to others through the intervention of such negligence. It becomes most obvious when the actor has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things." (footnotes omitted)

In *Neal v. Shiels, Inc.*, 166 Conn. at 13, 347 A.2d at 108, the court stated:

"In view of these principles, the operator of an ice cream truck, when he intentionally undertakes to attract children into the street, by such action, assumes the legal duty to act with care in relation to the children he has attracted to his area of business. The precise question presented in the case before us is whether the duty of the defendant Chester extended to protecting the young plaintiff from the negligence of others. When a street vendor deliberately uses a public street or an area close to or adjacent to a public street to sell his wares for profit, and by his bell, gong, chimes or other method of attraction, consciously and intentionally invites potential customers, many of whom are children, to the zone of danger from traffic, it is forseeable that children would cross the street and be in streets in the area where he is doing business and where there is potential danger. When this happens, a duty arises with respect to the safety of the children deliberately enticed into the area, having in mind their often single minded interest in his wares and their accompanying disregard for traffic. [citations omitted] 'Common sense and the most minimal regard for humanity suggest that one who intentionally attracts small children to a place in or so close to a street or highway that there is danger of their being struck by passing traffic should be under a duty to maintain a lookout for such traffic and, if he observes or in the exercise of ordinary care should observe a vehicle approaching close enough to constitute an immediate hazard, to warn the children present in the immediate area of the attraction or makes such other reasonable effort to prevent their being injured as may be necessary in the circumstances.' [citation omitted] This duty of care extends not only to children actually observed but to children whom the defendant would have observed had he been using reasonable care."

## THE OPEN AND OBVIOUS INSTRUCTION

Plaintiff contends the trial court erred in giving the instruction on open and obvious dangers. We will limit our discussion of this issue to the objection which plaintiff raised below. In the trial court plaintiff contended that the open and obvious instruction should not be given unless her attractive nuisance instruction was also given. Because the attractive nuisance instruction was not appropriate, the trial court did not err when it overruled plaintiff's objection and gave the open and obvious instruction.

## NEGLIGENCE PER SE

Plaintiff contends the trial court erred in not giving a negligence per se instruction because the driver violated the safety code by parking his vehicle 2½ feet and not 18 inches from the curb. We do not agree. The violation of the ordinance must also have been a proximate cause of the injury. There was no such evidence here.

## THE DEATH OF THE DEFENDANT LEIGHTON

Plaintiff contends the trial court erred in denying her motion in limine to preclude any disclosure to the jury that the defendant Leighton was deceased. She contends the most the trial court should

have done was to inform the jury, without further explanation, that the defendant was unavailable. We do not agree. The jury had the right to know why Leighton was not present at the trial. Furthermore, there was no evidence that the plaintiff was prejudiced by this evidence.

## DENIAL OF THE MOTION FOR A NEW TRIAL

The plaintiff contends that the jury verdict was against the weight of the evidence and that the trial court abused its discretion in not granting her motion for new trial. We do not agree. "The grant or denial of a motion for a new trial is within the sound discretion of the trial court...." *Erickson v. Waller*, 116 Ariz. 476, 479, 569 P.2d 1374, 1377 (App.1977). We will not upset a trial court's denial of a motion for new trial absent a clear showing that the trial court abused its discretion. *Suciu v. Amfac Distributing Corporation*, 138 Ariz. 514, 675 P.2d 1333 (App.1983). The issue here is not whether the evidence could have easily supported a verdict in favor of the plaintiff but rather whether the evidence, when considered as a whole, could not reasonably support a verdict for the defendant. Among other things, the jury could have found in this case that either the boy or the plaintiff was contributorily negligent.

As a further ground for a new trial the plaintiff contended that there was newly-discovered evidence which would have had a substantial effect on both the court's ruling and on the jury's determination. The managing agent of Arizona Family Restaurants testified that he did not recall any prior accidents involving drivers for the company. According to the plaintiff an almost identical accident, which allegedly involved a child crossing in front of an ice cream truck, had occurred five months before this accident. Plaintiff contends the trial court erred in not granting her motion for a new trial based on this evidence which was not discovered until after the trial. We do not agree. In order to grant a new trial on the ground of newly discovered evidence the party must establish, in-

ter alia, that such evidence would probably change the result of the trial. *Rustin v. Cook*, 143 Ariz. 486, 694 P.2d 316 (App. 1984). This evidence could only have been relevant to the liability of Arizona Family Restaurants. We have already held that Arizona Family Restaurants was correctly directed out of the case, therefore, this newly-discovered evidence was irrelevant.

Affirmed.

LACAGNINA, C.J., and HATHAWAY, J., concur.