EDWARD E. DUTTON *vs.* AMESBURY NATIONAL BANK.

Essex.   November 7, 1901. — April 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Agency.   Master and Servant.   Negligence,* Contributory.

The plaintiff's shop was in a building separated by a passageway six feet wide from the defendant's bank building, the boundary line running through the centre of the passageway.  The cashier of the defendant employed one S. to repair the cellar wall of the bank on the side next the passageway in order to stop water from flowing into the cellar.  Workmen employed and paid by S. negligently left extending across the passageway a pile of earth from the excavation made in repairing the wall.  After the pile of earth had remained there for a week, a snow storm followed by rain occurred, and the pile of earth dammed the water in the passageway and caused it to flow in at the plaintiff's window and injure his goods.  *Held,* that there was no evidence that the workmen of S. whose negligence caused the injury were the servants of the defendant. KNOWLTON, J. dissenting.  *Held, also,* that the plaintiff was not as matter of law negligent in allowing the pile of earth to remain for a week where it was, one half of it on his own land.

TORT for injury to goods of the plaintiff by a flow of water alleged to have been caused by the negligence of the defendant's

servants in leaving a pile of earth in a common passageway, thus turning surface water into a window of the plaintiff's shop. Writ dated April 26, 1900.

The case was heard in the Superior Court by *Maynard*, J., upon an auditor's report agreed by the parties to be true. The rulings requested by the defendant and refused by the judge are stated by the court. The judge found for the plaintiff in the sum of $123.75; and the defendant alleged exceptions.

The case was submitted on briefs at the sitting of the court in November, 1901, and afterwards was submitted on briefs to all the justices.

*A. W. Reddy, Jr. & J. J. Reddy*, for the defendant.

*M. A. Pingree & J. J. Ryan*, for the plaintiff.

LATHROP, J.   This is an action of tort for injuries sustained by the plaintiff in consequence of the negligence of persons alleged to be the servants of the defendant. In the Superior Court the case was sent to an auditor, who found certain facts, and further found for the plaintiff in the sum of $123.75. The case was then heard by a judge of the Superior Court upon the report of the auditor, whose findings were agreed to be true, and a finding was made for the plaintiff in the same amount. The case comes before us on the defendant's exceptions to the refusal of the judge to give two rulings requested. Before stating them, it will be necessary to set forth the facts found by the auditor, which are in substance these.

The plaintiff was the occupant of a store on the westerly side of Main Street in Amesbury, separated from the defendant's building by a passageway about six feet wide. The division line between the two estates ran through the centre of the passageway. In March, 1890, the defendant found that water was coming into its cellar through the wall next to the passageway, and the cashier of the defendant went to the place of business of one Sawyer to get him to repair the cellar wall and stop the water from running into the cellar. Sawyer was not in, but the cashier found one Grenier, who was in Sawyer's employ, and who had charge of the business in the absence of Sawyer, and requested him to go to the place, and stop the water from running into the cellar. Grenier went to the building, employed

help, and dug up the earth in the passageway in order to reach the leak in the defendant's wall.   The earth dug up was thrown in a pile across the passageway from the plaintiff's store to the defendant's building.   The pile remained there about a week, when there came a snow storm, followed by rain.   The water ran down the passageway until it was stopped by the pile of dirt, when it ran into a window of the plaintiff's store, the sill being at about the level of the surface of the passageway, and did the injury complained of.

The plaintiff knew that the pile of earth was across the passageway for a week before the water ran into the store.   As soon as the plaintiff found that the water was running into the store, he dug away the pile of earth and stopped the water from coming in.   The auditor found that the plaintiff was not guilty of negligence in not removing the pile of earth before the storm.

In answer to the contention of the defendant that Sawyer was a contractor, the auditor reported as follows: "I do not find that said Sawyer made any contract with the defendant to stop the water from running into its cellar, but I find that said Sawyer did the work under a general employment, and was to receive a reasonable compensation therefor."   In this connection also, the following appears in the report: "It did not appear that the defendant gave any directions about the work done by Grenier, but left the method of doing the work and stopping the leak to his judgment."

The requests asked for and refused were as follows: "1. On the evidence as agreed, the relation of master and servant did not exist between Sawyer and the defendant, and the plaintiff cannot recover. 2. The plaintiff, having seen the earth piled upon his own land at least a week before the injury complained of, it was his duty to remove it, or to so arrange it as to prevent it being the cause of further damage, and not having done so, did not comply with the law which requires every one to use reasonable care to protect his own property against what may cause injury to it and to prevent unnecessary damage."

The principal question in the case arises on the first request for instructions, and is whether the relation of master and ser-

vant existed between the defendant and Sawyer. To establish the liability of one person for the negligence of another, it is not enough to show that the person whose negligent action caused the injury was at the time in the employment of the person sought to be charged, but it must also be shown that the relation of master and servant existed between them. This distinction sometimes has been lost sight of. Until the case of *Hilliard* v. *Richardson*, 3 Gray, 349, was decided, our decisions were in a somewhat anomalous state. Compare *Sproul* v. *Hemmingway*, 14 Pick. 1, 5, with *Stone* v. *Codman*, 15 Pick. 297. In *Hilliard* v. *Richardson*, it was held that where the owner of land employed a carpenter for a specific price to repair a building thereon, and to furnish all the materials for the purpose, he was not liable for injury to a third person, caused by the negligence of a teamster employed by the carpenter in depositing boards in the highway in front of the house. See also *Linton* v. *Smith*, 8 Gray, 147; *Conners* v. *Hennessey*, 112 Mass. 96; *Boomer* v. *Wilbur*, 176 Mass. 482.

It so happened in *Hilliard* v. *Richardson* that the price to be paid was a specific sum, and it is not surprising that at first this fact was seized upon as the turning point in determining whether the relation was that of master and servant or of contractor and contractee. See *Brackett* v. *Lubke*, 4 Allen, 138; *Forsyth* v. *Hooper*, 11 Allen, 419. Later, the method of payment was held to be not the test, but whether the person employed " was in the exercise of a distinct and independent employment, using his own means and methods for accomplishing his work, and not being under the immediate supervision and control of his employer." *Morgan* v. *Sears*, 159 Mass. 570, 574. See also *Dane* v. *Cochrane Chemical Co.* 164 Mass. 453, 456; *Harding* v. *Boston*, 163 Mass. 14; *Hexamer* v. *Webb*, 101 N. Y. 377, 385; *Corbin* v. *American Mills*, 27 Conn. 274; *Murray* v. *Currie*, L. R. 6 C. P. 24.

In the case at bar the burden of proof was upon the plaintiff to show that the relation of master and servant existed between the defendant and Sawyer. This was not shown. The language of the auditor, when he says: " I do not find that said Sawyer made any contract with the defendant to stop the water from running into its cellar," would seem to mean " no contract in

writing." But this is not important. There was clearly a verbal contract either to stop the water from running into the cellar or to try to stop it, — and it is immaterial which, — for which Sawyer was to have a reasonable compensation. In carrying out this contract, the plaintiff was injured by the negligence of the servants of Sawyer, who were hired by his representative Grenier. The defendant neither hired these servants nor was under any obligation to pay them. It exercised no control over them, nor, so far as appears, had any right to exercise such control. The method and manner of doing the work was left entirely to the skill and judgment of Sawyer, who on the facts found does not appear not to have been an independent contractor, for the negligence of whose servants the defendant is not shown to have been responsible. The first instruction requested should therefore have been given, at least in substance.

The second instruction requested was properly refused. The auditor did not find that the plaintiff was guilty of negligence in not removing the pile of earth before the storm. We cannot say, as matter of law, that the plaintiff was not in the exercise of reasonable care.                    *Exceptions sustained.*

KNOWLTON, J. I do not agree to the opinion of the majority of the court. I cannot make plain the reasons for my dissent without stating propositions which seem to me elementary. If the cashier had directed the janitor of the bank to dig up the earth and stop the opening in the wall, I think no one would doubt that the janitor would have been the servant of the bank in doing the work. The same result would as certainly have followed if the cashier had found a laborer waiting for a job at the corner of a street and had employed him to do the work under the same general direction. In each case, irrespective of the amount or mode of payment, the employee would be the servant of the bank in such a sense as to create a liability from the bank to third persons for the consequences of his negligence. This is because the business that would be going on in making the repairs would be the bank's business, of which it would have a perfect legal right of control. It could at any time suspend or continue the work, and the employee would be all the time subject to any direction that it might choose to give. He would

have no right for a moment to do anything against the will of the bank, and in everything he did he would be the representative of the principal proprietor. Under such circumstances the proprietor is justly held accountable to third persons for that which is done. One working in such a way is, in reference to persons affected by his work, the servant of the proprietor.

If the work is done by an independent contractor under an agreement which makes him accountable only for the result to be produced, and which gives him a right to determine how the result shall be accomplished, and to control the persons and instrumentalities employed to accomplish it, this contractor becomes the proprietor of the business included in the contract, and the owner with whom he contracts is not responsible for his methods or for those of his servants. But so long as the owner makes no contract that divests him of the proprietorship of the business as it goes on, and of the legal right to control it, his rights and liabilities are not affected by the fact that he chooses to intrust the management to a servant who is an expert. It often happens that a servant is a person of great skill and experience in the business in which he is engaged, and that the master is entirely incompetent to do the work with his own hands, or even to give intelligent directions about the details. It never was held that the legal relations of the parties are any different in cases where the master tells the servant what he wants done and leaves to him the method of doing it from their relations in those where the master gives personal directions in every detail. The proposition that liability to third persons depends not upon the exercise of control by the owner, but upon the right to exercise it, was elaborately stated in the charge to the jury in *Linnehan* v. *Rollins*, 137 Mass. 123, and the instructions were approved by this court. The principle is familiar law, and has been applied in many cases.

The facts found by the auditor introduce an element which is often spoken of in the cases as the furnishing or lending of a servant by his general master to another person who becomes his master for the time in the business in which he is employed. This furnishing or lending is commonly for a valuable consideration, but the liability of a hirer to third persons is the same as if the servant were lent gratuitously. *Donovan* v. *Laing*, [1893]

1 Q. B. D. 629, 633.    One who needs temporary service of a special kind often can obtain it most easily by applying to one engaged in that kind of business, who sends him one or more of his servants to do the work.   In such a case, when there is no special contract by which the owner gives up his right to control the business or to change his mind, the persons sent become his servants while doing his work, so far as relates to his liability for their acts.   They are not his employees within the meaning of the word as used in the employers' liability act.   St. 1887, c. 270, § 1, R. L. c. 106, § 71.   This statute in most of its provisions deals only with those who stand in the direct contractual relation to each other of employer and employee.   It has been held not to apply to those who have come into the relation of master and servant only through their respective contracts with a third person who is the general employer of the servant.   *Dane* v. *Cochrane Chemical Co.* 164 Mass. 453.   The general principles applicable to lending or furnishing servants for hire have been stated in many cases.   *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12.    *Hasty* v. *Sears*, 157 Mass. 123.    *Ward* v. *New England Fibre Co.* 154 Mass. 419.   *Killea* v. *Faxon*, 125 Mass. 485.    *Clapp* v. *Kemp*, 122 Mass. 481.    *Coughlan* v. *Cambridge*, 166 Mass. 268, 277.    *Kimball* v. *Cushman*, 103 Mass. 194, 198.   *Forsyth* v. *Hooper*, 11 Allen, 419, 421, 422.   *Morgan* v. *Sears*, 159 Mass. 570.

Where one furnishes for hire or lends to another a team of horses with a driver, the circumstances are often such that while the driver becomes in some parts of the business the servant of the person to whom the team is furnished and who has the right to tell him what to do and where to go, he is the servant of his employer in those particulars which relate directly to the management of the horses, because it is implied that, in the interest of the owner of the team and as his representative, he will manage and direct, within reasonable limits, such matters as pertain to the health and safety of the horses and the safety of the vehicle. In these particulars, for the preservation of his property, it will be presumed that the owner of the team retains in his driver the right of control.   See *Reagan* v. *Casey*, 160 Mass. 374 ; *Huff* v. *Ford*, 126 Mass. 24 ; *Quarman* v. *Burnett*, 6 M. & W. 499 ; *Jones* v. *Corporation of Liverpool*, 14 Q. B. D. 890 ; *Jones* v. *Scullard*,

[1898] 2 Q. B. 565, 572; *Donovan* v. *Laing Construction Syndicate,* [1893] 1 Q. B. 629, 633.

The present seems to me an ordinary case of one who procures from another, to do certain work, servants who are supposed to know how to do it. It does not appear, nor is it material, whether the first part of the first instruction requested, properly could have been given, namely, that " the relation of master and servant did not exist between Sawyer and the defendant," for so far as appears, Sawyer did not serve personally in the business, but did the work only in the sense that he furnished his servants to do it, and was to receive a reasonable compensation for their services. This he did through his foreman who received the order and acted under it. The defendant all the time had the legal right to control all the work in every particular. There was no contract to prevent the defendant from suspending it at any time, or from making any change that it chose in regard to it. The fact that the defendant chose to leave the method of doing it to Sawyer's foreman is immaterial.

The case is identical in its legal principles, and almost identical in its facts with *Stone* v. *Codman,* 15 Pick. 297, which is discussed and approved by Mr. Justice Thomas in *Hilliard* v. *Richardson,* 3 Gray, 349, 351. In my judgment it is impossible to make a legal distinction between the two cases. In *Hilliard* v. *Richardson* many other cases are considered, and among them *Sadler* v. *Henlock,* 4 El. & Bl. 570, which is also very similar to the case at bar. I am of opinion that the auditor and the judge of the Superior Court were right in their rulings.