SIMON J. KELLEY'S DEPENDENTS *v.* HOOSAC LUMBER COMPANY AND EMPLOYERS' LIABILITY ASSURANCE CORPORATION.

February Term, 1921.

Present:    WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and FISH, Supr. J.

Opinion filed May 3, 1921.

*Workmen's Compensation Act—Independent Contractor not "Workman" or "Employee"—Common-law Decisions Controlling As to Who Is an Employee—"Employee" and "Independent Contractor" Defined—Ordinary Rules of Procedure Apply to Proceedings—Burden on Claimant to Establish Prima Facie Case—Prima Facie Case Stated—Burden on Employer to Overcome Prima Facie Case—Appeal From Commissioner of Industries—His Findings Conclusive if Supported by Evidence—Employees Excluded From the Act.*

1.    An independent contractor is not a "workman" or "employee" within the meaning of the Workmen's Compensation Act.

2.  Common-law decisions involving the liability of a master for injuries received by his servant are controlling in determining who are employees within the meaning of the Workmen's Compensation Act.

3.  If under a contract a party for whom work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work, the former is an employer and the latter an employee within the meaning of the act; but if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, the latter is not an employee but an independent contractor; the master test being the right to control the work.

4.  The ordinary rules of procedure, except so far as modified by the act, apply to proceedings under the Workmen's Compensation Act.

5.  In a proceeding under the act to obtain compensation for the death of an employee, the burden of proof at the outset is on the claimant to establish such facts as are essential to a recovery, including the necessary relation between the alleged employer and the employee.

6.  In such a proceeding, when it is made to appear that the deceased was at the time of the accident performing work on the alleged employer's premises, and for his benefit, a *prima facie* case of ordinary service is made out; and, if the alleged employer seeks to avoid liability on the ground that the alleged employee was an independent contractor, he assumes the burden of evidence on that point.

7.  On an appeal to the Supreme Court from an award of the Commissioner of Industries, his findings are binding upon the Court if they are legally supported by evidence.

8.  Evidence held to support the commissioner's finding that the deceased, who was killed while cutting logs by the thousand feet, was at the time of his death an employee, and not an independent contractor.

9.  There being a conflict in the evidence, and there being evidence sustaining the commissioner's finding that the deceased was an employee, his decision must stand; and this is so in all cases where, in any reasonable view of the evidence, it will, directly or by fair inference, support the findings.

10.    Only such employees as work under a contract, the definite term of which is one full year or more, and at a determined or determinable wage exceeding $2,000 per year, are excluded from the Workmen's Compensation Act; and all other employers, regardless of the total amount earned, are within the act.


APPEAL from an award of the Commissioner of Industries, Bennington County, ordering the defendants to pay the claimant a specified sum on account of the death of Simon J. Kelley, her husband, who was accidentally killed while cutting logs for the Hoosac Lumber Company.    The opinion states the case.

*Harvey, Maurice, Whitney & Fitts* for the defendants.

*Holden & Healy* for the claimant.

POWERS, J.    This is an appeal from the award of the Commissioner of Industries ordering the defendants to pay the claimant a specified sum on account of the death of Simon J. Kelley, her husband, who was accidently killed on February 22, 1919, while cutting logs for the Hoosac Lumber Company, hereinafter spoken of as the defendant.

The first question involved is whether the decedent's relation to the defendant at the time of the accident was such as to entitle his dependents to the benefits of the Workmen's Compensation Act (G. L. Chap. 241).

[1]    It is not always an easy matter to draw the line of distinction between those who, under the Compensation Acts, are to be classed as employees and those who are to be classed as independent contractors.    The attempt to do so has involved the courts in much perplexity and some inconsistency—as will appear from a study of *Messmer* v. *Bell, etc., Co.*, 133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1, and note.    Our own act attempts to simplify this matter by defining the words "workman" and "employee" as a person who has entered the employment of or works under a contract of service with an employer.    G. L. 5758, II. The scope of this language, broad as it is, is not all-inclusive, and independent contractors are not within it.    But the definition affords little aid in a close case.    The truth is that the ultimate test depends upon divers considerations of varying importance, all of which must be considered, and no one of which is determin-

ative; and it is extremely difficult, if not impossible, to make a statement of definite facts by which the status of a given person can unfailingly be determined.

The value of precedents is somewhat uncertain. A slight difference in the wording of the statutes or some small variation in the circumstances may impair the value of an outside decision when attempt is made to apply it here.

[2, 3] It was said in *Rheinwald* v. *Builders' Brick, etc., Co.,* 168 App. Div. 425, 153 N. Y. S. 598, that common-law decisions involving the liability of a master for injuries received by his servant are not controlling in cases under Compensation Acts, nor as valuable therein as cases under the acts themselves. But this idea was repudiated in *Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807, 159 Pac. 721, and we think rightly so; for we are satisfied that the learning of the common-law decisions affords the safest guide to a proper interpretation of such statutes. Accordingly, we look to our own cases for the rule to direct us to a correct decision of the question in hand. We find it in *Bailey* v. *Troy & Boston R. Co.,* 57 Vt. 252, 52 A. R. 129, and *Richards* v. *Consolidated Lighting Co.,* 90 Vt. 552, 99 Atl. 241. It is this: If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control the work. And it is this right which properly differentiates service from independent employment. It is to be observed that actual interference with the work is unnecessary—it is the right to interfere that determines. *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385, 158 N. W. 875; *Knicely* v. *West Virginia Midland R. Co.,* 64 W. Va. 278, 61 S. E. 811, 17 L. R. A. (N. S.) 370; *Franklin Coal & Coke Co.* v. *Industrial Co.* (Ill.) 129 N. E. 811.

[4-6] The ordinary rules of procedure, except so far as modified by the act, apply to these proceedings. At the outset, the burden of proof was on the claimant to establish such facts as were essential to a recovery (*Gorral* v. *William Hamlyn & Son,* 38 R. I. 249, 94 Atl. 877; *Carberry* v. *Delaware, etc., R. Co.,*

93 N. J. Law, 414, 108 Atl. 364; *In re Sanderson's Case,* 224 Mass. 558, 113 N. E. 355), including, of course, the necessary relation between Kelley and the defendant. *Dutton* v. *Amesbury National Bank,* 181 Mass. 154, 63 N. E. 405; *Aisenberg* v. *Adams & Co.,* 95 Conn. 419, 111 Atl. 591; *Scoggins* v. *Atlantic, etc., Co.,* 179 Ala. 213, 60 So. 175; *Zeitlow* v. *Smock,* 65 Ind. App. 643, 117 N. E. 665. But when it was made to appear that Kelley was at the time performing work on the defendant's premises, and for the defendant's benefit, a *prima facie* case of ordinary service was made out, and when the defendant sought to avoid liability on the ground that he was an independent contractor, it assumed the burden of evidence on that point. See 19 Ann. Cas. at page 6.

With these rules in mind, we turn to the record before us, and find that Kelley entered the employ of the defendant on December 6, 1918. For ten days thereafter he worked as a teamster at a wage that amounted to four dollars per day. Holland Rutledge was the defendant's superintendent at this time, and he was the man who made the contract with Kelley. The defendant was anxious to secure as large a stock of logs as possible during the season, and to that end made to its employees three propositions to cut logs by the thousand, one of which was that the defendant would pay twelve dollars per thousand feet for cutting and delivering logs at the mills. Kelley and a man named Beers accepted this offer, and went to work together under it, and while so engaged Kelley was killed by a falling tree. Under this arrangement he paid the defendant a dollar a day for his board, and he and Beers hired its teams to draw the logs at the rate of eight dollars per day for each team and its driver. The tools used in this work were furnished without charge by the defendant. The foreman of the defendant blazed out the roads for Kelley and Beers, and, when they had cut the logs on one road, they would report to the foreman, and he would blaze out another for them to work by. They were subject to the foreman's directions as to where they should come and go, and cut, "and so on," the commissioner says, but the defendant had no right to call Kelley away from this to some other work. The defendant specified the lengths the logs were to be cut, gave directions as to the size down to which trees were to be taken, as to where the tops were to be left, and to the unloading at the mills. Kelley worked at other things for the defendant in all six days, while

cutting by the thousand, but this was at times when for one or another reason he could not work in the woods. He and Beers were bound to deliver at the mills all logs cut by them. They, and the others working by the thousand, were carried on the defendant's books with the per diem men, but the pay roll sheets on which their names appeared were headed "Jobbers." Rutledge testified that the defendant had the right to put these "jobbers" at other work, and Beers testified that if Rutledge had directed Kelley to work with some one else, or somewhere else, he would have had to obey or quit, and that Rutledge told them that they could not hire in men to help them. Their contract ran for no particular time, but could be terminated at any time, and it did not cover a specified tract or quantity. Upon these facts the commissioner concluded that Kelley was an employee.

[7, 8]   So far as the commissioner's findings of fact are concerned, they are binding upon us (*Packett* v. *Moretown Creamery Co.*, 91 Vt. 97, 99 Atl. 638, L. R. A. 1918 F, 173), provided they are legally supported by evidence. They stand like the findings of a referee or master in that regard. If a party desires a retrial on the facts, his appeal should be taken to the county court. G. L. 5807. This Court is intrusted only with power to review questions of law. G. L. 5808. On the record, we cannot say as matter of law that the findings of the commissioner are not fairly and reasonably supported by the evidence or that his conclusion thereon was wrong. The most that we can say is that there was a conflict in the evidence. To illustrate: The fact that Kelley was paid by the thousand is an important feature indicating that he was an independent contractor—though, as all agree, it is not conclusive. *Corbin* v. *American Mills*, 27 Conn. 274, 71 A. D. 63; *Dutton* v. *Amesbury National Bank*, 181 Mass. 154, 63 N. E. 405; *Pace* v. *Appanoose County*, 184 Iowa, 498, 168 N. W. 916; *Thompson* v. *Twiss*, 90 Conn. 444, 97 Atl. 328, L. R. A. 1916 E, 506; *Bristol & Gale Co.* v. *Industrial Com.*, 292 Ill. 16, 126 N. E. 599; *In re McAllister's Case*, 229 Mass. 193, 118 N. E. 326. On the other hand, the fact that the defendant could, at any time, and without liability, stop the work and terminate the relation, is an important feature indicating that Kelley was, under the law, an employee. *Bristol & Gale Co.* v. *Industrial Com., supra; Board of Comrs.* v. *Shertzer* (Ind.) 127 N. E. 843; *Muncie, etc., Co.* v. *Thompson* (Ind.) 123 N. E. 196; *Dickson* v. *Hollister*, 123 Pa. St. 421, 16 Atl. 484, 10 A. S. R. 533; *Brackett* v. *Lubke*, 4

Allen (Mass.) 138, 81 A. D. 694; *Aisenberg* v. *Adams & Co.,* 95 .Conn. 419, 111 Atl. 591.

The fact that Kelley and Beers were required to get in all of the logs cut by them indicates an independent employment. But the fact that they were not obliged to cut a definite quantity, ·or over a definite area, or for a definite time (*Virginia & Rainy Lake Co.* v. *District Court,* 128 Minn. 43, 150 N. W. 211; *Muncie, etc., Co.* v. *Thompson, supra; Tuttle* v. *Embury-Martin Co.,* 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918 C, 664), and the fact that the defendant was to furnish the tools (*Bristol & Gale Co.* v. *Industrial Com., supra;* note, Ann. Cas. 1913 B, 576), indicate an arrangement for service only.

[9]    There being this conflict in the evidence, and there being evidence sustaining the conclusion that Kelley was an employee, the decision of the commissioner must stand. *Franklin Coal & Coke Co.* v. *Industrial Co.* (Ill.) 129 N. E. 811.    This is so in all cases where, in any reasonable view of the evidence, it will, directly or by fair inference, support the findings. *Wausau Lumber Co.* v. *Industrial Co.,* 166 Wis. 204, 164 N. W. 836.

The only other question requiring consideration relates to the amount of Kelley's remuneration.    By the terms of G. L. 5758, the act does not apply to a workman whose remuneration exceeds two thousand dollars per year, unless the agreement therein specified is entered into.    No such agreement was made between Kelley and the defendant, so if he belonged to the class of workmen referred to in this provision, he was outside the act, and the claimant cannot recover.    The findings show that during the year just prior to his death he actually received as earnings slightly more than two thousand dollars.

By G. L. 5777, the average weekly wage of the workman is made the basis of the death benefits thereunder, and by G. L. 5790, .as it read when this accident occurred, it is provided that that average shall be computed—disregarding a proviso not applicable here—so as to ascertain the average of his weekly earnings during the twelve months preceding his injury; but if at that time he is regularly employed in a higher grade of work than formerly during the year, and with larger regular wages, only such larger wages shall be considered in computing his average weekly wages. So the defendant argues that to make the whole act logical and consistent, the remuneration referred to in G. L. 5758 should be

computed in the way specified in one or the other of the clauses of G. L. 5777—either by taking what the workman actually earned during the previous year, or by taking the sum which his present wage would come to in a year. Obviously, Kelley was outside the act if his remuneration was to be computed by either of these methods.

The whole question depends upon the construction of the statute. The Legislature has not pointed out the proper method of procedure to ascertain the remuneration, and there are no decisions to give much aid to the proper solution of that problem. In these circumstances, we are at full liberty to ascribe to this provision a meaning which, in our judgment, best accords with the general legislative intent, and best carries into effect the beneficent purposes of the act. This requires us to adopt such a construction as will extend its provisions to the largest possible class of employees, and to restrict those excluded from its provisions to the smallest possible class. We ought also to give it such a construction as will make its application as certain as possible to the end that both employer and workman may know in advance whether it is to regulate their relations or not.

[10] We hold, therefore, that the only employees excluded from the act under this section are those working under a contract the definite term of which is one full year or more, and at a determined or determinable wage amounting to more than two thousand dollars; and that all other employees, regardless of the total amount earned, are within the act.

The language of the section under consideration supports this construction. It is to the effect that an employee is one who serves an employer, but not one whose remuneration exceeds the sum specified. It is apparent that the remuneration thus spoken of refers to that received from the employer mentioned—the man from whom compensation is to be demanded. If we apply this provision to all the workman's employments, without regard to the term of the engagements, the result is thrown into uncertainty, and in many cases neither employer nor employee will or could know in advance whether their engagement is to be within the act.

The construction we adopt makes the provision simple and workable, and harmonizes both with the spirit of the act itself and the spirit of the times which prompted its passage by the

Legislature.    Tested by this rule, Kelley was within the act, and the result reached by the commissioner was correct.

*The award is affirmed with costs.    Let the result be certified to the Commissioner of Industries.*