# E. H. KOESTER BAKERY et al. *vs.* PAUL IHRIE.

*Workmen's Compensation Act—Who Entitled to Benefit—
Receipt of Salary.*

The provision of the Workmen's Compensation Act that it shall not apply to any employee whose "salary" is in excess of two thousand dollars a year does not exclude from its benefits one employed as a driver at an average weekly wage of forty dollars.                                     pp. 222-225

That the Legislature meant the word "wage," as used in one section of the act, to include the word "salary" does not show that it meant the word "salary," as used in other sections, to include the word "wage."                            p. 223

*Decided January 15th, 1925.*

Appeal from the Baltimore City Court (DUFFY, J.).

Claim by Paul Ihrie against the E. H. Koester Bakery, employer, and the Casualty Reciprocal Exchange, insurer, under the Workmen's Compensation Act. From a judgment in favor of the claimant, the employer and insurer appeal. Affirmed.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*George W. Lindsay.* with whom were *Sauerwein, Lindsay & Donoho* on the brief, for the appellants.

*Harold Tschudi,* with whom were *William D. Macmillan* and *James U. Dennis* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

Paul Ihrie, the appellee, an employee of the E. H. Koester Bakery, one of the appellants, was seriously injured while engaged in the course of his employment, in a collision between a bread truck which he was driving and a fire engine. He duly filed his claim for compensation with the State Industrial Accident Commission, which, on February 18th, 1922, made an award reciting the fact of the injury and also the claimant's average weekly wage of $40, and that he was temporarily incapacitated, and ordered the employer and the Casualty Reciprocal Exchange, the insurer, the other appellant, to pay the appellee compensation at the rate of $18 per week.

On July 5th, 1923, after further examination of appellee, the insurer was notified by the Commission "that if no objection is raised before July 10th, 1923, the former order will be modified to allow compensation for three-fourths loss of use of leg, subject, however, to a credit for such amount as may have been paid on account of the previous order passed in this case."

On July 6th, 1923, the insurer replied to this notice protesting against the entering of any award fixing the disability at three-fourths the loss of the use of the leg; formally denying the jurisdiction of the Commission "because the record discloses that the average compensation of the employee is in excess of $2000 a year." The insurer calls attention to the fact that it has paid large medical bills and alleges that several doctors have given the opinion that the disability does not exceed 50%, and states that, notwithstanding its denial of the jurisdiction of the Commission, it has continued the payment of the weekly sums awarded and has continued to provide medical treatment and has offered and stands ready to pay to the said employee a sum equal to compensation predicated upon 50% of the loss of the use of the leg, with credit for payments already made, which offer the said employee has not accepted.

Whereupon a rehearing was ordered by the Commission:

1. To determine whether the Commission has jurisdiction, because the records disclose that the average compensation of the employee is in excess of $2,000 a year.

2. To determine the nature and extent of the disability.

At the conclusion of the hearing on July 25th, 1923, the Commission found for the claimant on both issues, and that the claimant sustained a permanent partial disability occasioned by three-fourths loss of the use of the left leg and rescinded its former order of February 18th, 1922, and ordered, in lieu thereof, "that the E. H. Koester Bakery, employer, and Casualty Reciprocal Exchange, insurer, pay unto Paul Ihrie compensation at the rate of $18 per week, payable weekly, for the period of one hundred and thirty-one and one-fourth weeks, said compensation to begin as of the 28th day of January, 1922, and that final settlement receipt be filed with the Commission in due time, subject, however, to 'a credit for such amount as may have been paid on account of the previous order passed in this case."

From that order an appeal was taken by the employer and the insurer to the Baltimore City Court.

At the trial of said appeal the claimant submitted the following issue:

"Did Paul Ihrie suffer seventy-five per cent. loss of use of the left leg, as the result of an accidental personal injury while in the employ of the E. H. Koester Bakery, on January 24, 1922?"

And the employer and insurer submitted the following issue, viz.:

"Was the salary of the employee at the time of the happening of the accident forming the basis of the claim in this case in excess of $2000 a year?"

Both of these interrogatories were refused by the trial court.

It granted, as modified, claimant's prayer, and refused the following prayer offered by the employer and insurer.

"The jury are instructed that if they shall find from the evidence that the claimant had received a salary of $40 a

week for a period of one year prior to the date of the accident, or longer, then the answer of the jury to the employer's first issue must be 'yes'."

The verdict was in favor of the claimant, affirming the award of the Commission. From the judgment entered on that verdict this appeal was taken.

There are two bills of exception, the first to the granting of claimant's prayer and the refusal of the employer's and insurer's prayer; the second to the refusal to submit to the jury for its determination the issue raised by the employer's and insurer's interrogatory.

As the only point raised by the appeal, as stated in appellants' brief, is involved in the refusal to submit to the jury the issue requested by the employer and insurer and to grant their prayer, it is unnecessary to consider claimant's granted prayer, except to say in passing that it excluded the inquiry which the appellants sought to have submitted to the jury. The sole question, then, for our determination is the meaning of the word "salary" as used in section 63 of article 101 of the Annotated Code of Maryland, said article being a codification of the Workmen's Compensation Act. The section referred to provides as follows:

"This act shall not apply to * * * any employee whose salary is in excess of two thousand dollars a year * * *"

It is strongly urged by appellants that there is nothing in the act to indicate that the Legislature intended to differentiate between "wage" and "salary"; that, all the way through "section 36, which is the compensation section of the law, * * * the word 'wage' is used, and nowhere therein will the word 'salary' be found. To hold that the Legislature did not intend by the use of the term 'wage' to include the term 'salary' would be in effect to deny a salaried employee all compensation or benefit whatsoever under the law in question, for unless the compensation of the salaried employee is fixed by section 36 of the law, there is no compensation whatsoever provided for him in the Workmen's Compensation Law. The word 'salary' is not used in that section, and unless the word

'wage' includes 'salary,' the salaried employee by such con-
struction would be denied all relief or benefit under the act."

It is a sufficient answer to the contention as to the effect of
the terms used in section 36 to say that it does not necessarily
follow that, because the Legislature meant the word "wage,"
as used in that section, to include the word "salary," it must
have meant the word "salary," as used in other sections, to
include the word "wage." In the broadest significance, a
"wage" is compensation for services rendered another. In
this sense it is broad enough to include "salary," though not
ordinarily so used. It was entirely appropriate to so use it
when dealing generally with employees in the section re-
ferred to. And that all classes of employees, not excluded by
other sections, were intended to be included in section 36 is
indicated by section 53, which prohibits any employer from
deducting any portion of the insurance premium from the
"wages" or "salary" of any employee entitled to the benefits
of the act.

In sections other than the one we are now asked to con-
strue, where the word "salary" is used, it clearly was not in-
tended to include "wages" as ordinarily understood. Thus,
section 3 provided for the salaries of the Commissioners; and
in section 53, above referred to, the words "salary" and
"wages" are used in the disjunctive, clearly indicating a
recognition by the Legislature of the distinction between
them in ordinary use.

It seems to us not without significance that in section 63,
in describing persons who were to be excluded from the bene-
fit of the act by reason of the size of their compensation, the
Legislature used a term having a restricted rather than one
having an inclusive meaning, in defining compensation. If
in section 63 it had been intended to include all employees
who earned more than $2,000 a year, "compensation" would
have been apt in referring to earnings. Or the word "wages"
might have been used, as it was in section 36, to indicate the
general application of the sections.

Of all possible words, it would be hard to select one more

inappropriate than "salary" to define the compensation of one employed by the day or week, with no certain tenure.

In *Blick v. Mercantile Trust Company,* 113 Md. 487, it was said: " 'Salary' in itself imparts a specific contract for a specific sum for a certain period of time." In that case the following was quoted with approval from *Words and Phrases,* vol. 7, page 6287. "There are three modes of compensating persons for service: fees, salaries and wages, all different each from the other; and the difference immemorially well understood. Fees are compensations for particular acts as the fees of clerks, sheriffs, lawyers, physicians, etc. Wages are compensations for services by the day or week, as of laborers, etc. Salaries are per annum compensation to men in official, and some other stations. * * *"

Section 63 was construed by the Industrial Accident Commission of this State in 1918, in the case of *David Drummer, employée, v. Bethlehem Steel Company, employer, and self-insurer,* Claim No. 16496. In a very able opinion by the late Chairman, Charles D. Wagaman, Esq., it was held that: "When the Legislature exempted from the benefits of the Compensation Act those employees receiving a salary in excess of $2,000, it gave expression to an evident intention to exclude from the benefits of the act those persons whose employment involved permanency and who were, at the same time, receiving a substantial income from said employment, and it did not exclude from the benefits of the act those who are receiving only temporarily a substantial income.

"We believe this conclusion is in harmony not only with the plain meaning of the language of the act, but also with the general tenor and purpose of the Compensation Law, to provide temporary relief for the large class of persons engaged in extra-hazardous employment, a vast majority of whom depend for their daily sustenance upon the uncertain tenure of employment from day to day or week to week."

We adopt this expression as our own. To hold otherwise, in our opinion, would be contrary to the spirit of the entire act, especially section 61, which provides that "this article

shall be so interpreted and construed as to effectuate its general purpose, and section 62, sub-section A, which provides that "it shall be presumed in the absence of substantial evidence to the contrary: (a) That the claim comes within the provisions of this article." See also *Kelley's Dependents v. Hoosack Lumber Co., 95 Vt. 50.*

We find no error in the rulings appealed from.

*Judgment affirmed, with costs to appellee.*