## THOMAS J. MCDERMOTT'S CASE.

Suffolk. January 10, 1933. — May 23, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act*, To whom act applies, Amount of compensation. *Agency*, What constitutes, Independent contractor. *Contract*, Of employment. *Words*, "Employee."

In proceedings under the workmen's compensation act, it appeared that the claimant when injured was a journeyman steamfitter, a member of a union, who at times had worked for contractors and at times for the subscriber; that at times when he had worked for the subscriber he had received the union rate per hour; that just before he was injured an agent of the subscriber found him in a plumbing shop

where he had sometimes been employed and hired him to repair a frozen sprinkler system in one of the subscriber's buildings; and that nothing was said about pay. The claimant testified that the agent gave him his orders and told him "just what to do" before he started the work; but he also testified that the only instructions given were "to replace the sprinklers that were frozen." The next day after he began work he was hurt by the fall of a wrench upon him. *Held*, that a finding was warranted that at the time of the injury the claimant was an employee of the subscriber as defined in G. L. (Ter. Ed.) c. 152, § 1.

A decree, entered in the Superior Court in proceedings under the workmen's compensation act respecting a claim by a steamfitter, recited that "it is impracticable to compute the 'average weekly wages'" of the claimant, and, there being no evidence that any person was employed at the same work by the same employer, resort was had to "the average weekly amount which, during the twelve months previous to the injury, was being earned . . . by a person in the same grade employed in the same class of employment and in the same district"; and such "average weekly amount" was fixed at $55 a week because that was the union rate of wages for a full week, and under G. L. (Ter. Ed.) c. 152, § 34, the maximum weekly compensation of $18 a week was allowed. There was not in the record any evidence that a steamfitter in the same district actually did earn or could have earned so much. On appeal, the decree was reversed and the case was ordered recommitted to the Industrial Accident Board for further hearing on the question of average weekly wages under G. L. (Ter. Ed.) c. 152, § 1 (1), at which hearing either party was given a right to offer additional evidence.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a claim for injuries received while the claimant was alleged to be in the employ of Rome Realty Corporation.

Material facts shown by the record are described in the opinion. In the Superior Court, by order of *Weed*, J., the decree described in the opinion was entered. The insurer appealed.

*G. Gleason*, for the insurer.

*N. Fusaro*, for the claimant, submitted a brief.

LUMMUS, J. The first question is whether the claimant was an "employee" under the workmen's compensation act, which defines the word as meaning "every person in the service of another under any contract of hire, express or implied, oral or written," with certain immaterial exceptions. G. L. (Ter. Ed.) c. 152, § 1. The relation of

employer and employee is the same relation that is familiar throughout the law under the name of master and servant, except that to be an employee, as distinguished from a servant generally (*Campbell* v. *Arnold*, 219 Mass. 160), one must serve under a contract of hire. *Humphrey's Case*, 227 Mass. 166. *Cameron* v. *State Theatre Co.* 256 Mass. 466. *Labatte* v. *Lavallee*, 258 Mass. 527.

The exact point at issue is whether the claimant was a servant or employee, or an independent contractor. The essence of the distinction is the right of control. If the person doing the work is responsible only for the performance of what he agrees to do, in the way in which he agrees to do it, and is not subject to direction and control as to every detail of the work, he is an independent contractor. On the other hand, if at every moment, with respect to every detail, he is bound to obedience and subject to direction and control, as distinguished from a right of inspection and insistence that the contract be performed (*Baker* v. *Texas Co.* 262 Mass. 425, and cases cited; *Kettleman* v. *Atkins*, 229 Mass. 89; *Pribulo* v. *Chiarelli*, 114 Conn. 32; Note 20 Am. L. R. 684) or a right to designate the work to be done under the contract (*Driscoll* v. *Towle*, 181 Mass. 416; *Shepard* v. *Jacobs*, 204 Mass. 110; *Eckert's Case*, 233 Mass. 577; *Gallagher's Case*, 240 Mass. 455; *Fox* v. *Pallotta*, 274 Mass. 110, 114; *Strong's Case*, 277 Mass. 243), then he is a servant or employee. *Chisholm's Case*, 238 Mass. 412. *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, 238. *Reardon* v. *Coleman Bros. Inc.* 277 Mass. 319, 321, 322. Other considerations and tests are important only as they bear upon the right of control. *Underwood* v. *Commissioner of Internal Revenue*, 56 Fed. Rep. (2d) 67. *Howard W. Luff Co.* v. *Capece*, 61 Fed. Rep. (2d) 635. *Clark's Case*, 124 Maine, 47. If payment for the work is made, the method of payment, whether by the job, the piece, cost plus a percentage, commission, day, hour, or not expressly determined, is not controlling, although it may be important. *Dutton* v. *Amesbury National Bank*, 181 Mass. 154. *Corliss* v. *Keown*, 207 Mass. 149, 152. *Marston* v. *Reynolds*, 211 Mass. 590. *McAllis-*

*ter's Case,* 229 Mass. 193. *Bradley's Case,* 269 Mass. 399. *Wescott* v. *Henshaw Motor Co.* 275 Mass. 82, 88. *Strong's Case,* 277 Mass. 243. *Hawker's Case,* 278 Mass. 335. *Glielmi* v. *Netherland Dairy Co. Inc.* 254 N. Y. 60. One may be a servant though far away from the master, or so much more skilled than the master that actual direction and control would be folly, for it is the right to control rather than the exercise of it that is the test. It has been held that one may be a servant though he furnish the labor of others whom he hires. *Linnehan* v. *Rollins,* 137 Mass. 123. *Murray's Case,* 130 Maine, 181. Compare *Dane* v. *Cochrane Chemical Co.* 164 Mass. 453, 455, 456; *Dutton* v. *Amesbury National Bank,* 181 Mass. 154; *Devlin* v. *Newfell,* 275 Mass. 279. While engaged in the same general work, one may be at certain times and for certain purposes the servant of a party, and at other times or for other purposes an independent contractor or the servant of another. *Cain* v. *Hugh Nawn Contracting Co.* 202 Mass. 237. *Centrello's Case,* 232 Mass. 456. *Mahoney* v. *New York, New Haven & Hartford Railroad,* 240 Mass. 8. *Bradley's Case,* 269 Mass. 399. *Pelletier's Case,* 269 Mass. 490. *Wescott* v. *Henshaw Motor Co.* 275 Mass. 82. *Manley's Case,* 280 Mass. 331.

In the present case the claimant was a journeyman steamfitter, a member of the union, who had worked at times for contractors and at times for the Rome Realty Corporation. While working for the Rome Realty Corporation he had received the union rate of $1.25 an hour. On February 20, 1931, the agent of the Rome Realty Corporation found him in a plumbing shop where he had sometimes been employed and hired him to repair a frozen sprinkler system in one of its buildings. Nothing was said about pay, but it could be inferred that the customary rate was understood. The claimant testified that the agent gave him his orders and told him "just what to do" before he started the work; but in another passage in the record the claimant testified that the only instructions given were "to replace the sprinklers that were frozen." The next day after he began work the claimant was hurt by the

fall of a wrench upon him. The Industrial Accident Board found that he was an employee of the Rome Realty Corporation, not an independent contractor, and awarded him compensation. The Superior Court entered a decree accordingly, and the insurer appealed.

This case is not like *Dutton* v. *Amesbury National Bank*, 181 Mass. 154, where the defendant was held not liable for the negligence of the servants of one Sawyer, who had a regular place of business, in trying to stop a flow of water under a general employment without stated price to do whatever was necessary to that end. It resembles more an illustration used by Knowlton, J., in his dissenting opinion. In the present case the claimant was a journeyman, not conducting an independent business, but accustomed to work as a servant for contractors. As to compensation the terms of his employment with the Rome Realty Corporation did not differ from the terms of his employment with contractors, and it may be inferred that the same relationship was created. The Industrial Accident Board could find that he was an employee. *McAllister's Case*, 229 Mass. 193. *Churchill's Case*, 265 Mass. 117. *Hill's Case*, 268 Mass. 491. *Anderson* v. *Stone*, 281 Mass. 458.

The decree recites that "it is impracticable to compute the 'average weekly wages'" of the claimant, and there being no evidence that any person was employed at the same work by the same employer, resort was had to "the average weekly amount which, during the twelve months previous to the injury, was being earned . . . by a person in the same grade employed in the same class of employment and in the same district." G. L. (Ter. Ed.) c. 152, § 1 (1). *Snow's Case*, 252 Mass. 426; *S. C.* 259 Mass. 376. *King's Case*, 234 Mass. 137. Such "average weekly amount" was fixed at $55 a week because that was the union rate of wages for a full week, and under G. L. (Ter. Ed.) c. 152, § 34, the maximum weekly compensation of $18 a week was allowed. But an examination of the record fails to show any evidence that a steamfitter in the same district actually did earn or could have earned so much. *Snow's Case*, 252 Mass. 426. For this reason the decree

must be reversed and the case recommitted to the Industrial Accident Board for further hearing on the question of average weekly wages under G. L. (Ter. Ed.) c. 152, § 1 (1), at which hearing either party may offer additional evidence.

*So ordered.*