King, J.
The plaintiff, Southern New England Conference Association of Seventh-Day Adventists (“SNECA”), instituted this declaratory judgment action to establish its right to coverage for a loss under an insurance policy issued by the defendant, Federal Insurance Company (“Federal”). This action concerns a loss suffered by SNECA as a result of its attorney, Richard Clark, who stole in excess of $582,000 from SNECA. Federal denied SNECA’s claim under an insurance policy’s employee theft coverage clause, asserting that Richard Clark was not an “employee” for purposes of the insurance policy. On November 23, 1998, the parties were before the court for a jury-waived trial. Because the parties stipulated to all the material facts,[1] the court heard oral argument and took the matter under advisement. After hearing and after consideration of the arguments of counsel and the agreed upon material facts, the court will find in favor of Federal for the following reasons.
FINDINGS OF FACT
1. SNECA is a corporation under the laws of the Commonwealth of Massachusetts. Its affairs are governed by a Board ofTrustees. Richard Clark (“Clark”) was retained by SNECA as its counsel in June 1976. During the years 1990 through 1994, SNECA retained the law firm of Clark & Reynolds. Clark & Reynolds was organized and operated by its two partners, Richard Clark and his brother-in-law, R. Craig Reynolds. Each calendar year, during the years 1990 through 1994, SNECA’s Board of Trustees considered a proposal to retain Clark & Reynolds as its counsel for the upcoming year. After the proposal was deliberated upon, the Board ofTrustees approved the retention of Clark & Reynolds as SNECA’s counsel. As part of the retention agreement, the Board ofTrustees authorized and paid a retainer fee of $8,700.00 to Clark & Reynolds for the work it was to perform during the upcoming calendar year. Clark & Reynolds was retained primarily to represent SNECA in real estate transactions. Occasionally, it also represented SNECA in litigation matters.
2. At some point prior to the Board ofTrustee’s 1995 annual meeting, the law partnership of Clark & Reynolds was dissolved. Subsequently, the Board ofTrustees decided at its 1995 annual meeting to continue to retain Clark individually as its counsel. The Board of Trustees authorized $8,700.00 as a retainer to be paid to Clark for the upcoming year. Aside from Clark, none of SNECA’s 110 full-time “employees” or 300 part-time “employees” have ever had their continued employment put to a vote at an annual meeting of the Board ofTrustees.
3. Neither the term “salary” nor the term “wages” was used by SNECA to characterize its payments to Clark & Reynolds or Clark individually. Although SNECA withheld employment taxes from its employees, salaries, it did not withhold any taxes from the *507 retainer it paid to Clark or Clark & Reynolds. SNECA characterized its payments to Clark and Clark & Reynolds as “corporation expenses” and “legal and fees” on its books of account and financial statements.
4. Although tuition assistance was available as an employment benefit to all full-time employees of SNECA who had children in denominational schools, neither Clark nor Clark & Reynolds was eligible for such tuition assistance even though Clark had children attending denominational schools. Likewise, neither Clark nor Clark & Reynolds were participants in any SNECA pension or health insurance plan.
5. Neither Clark and Reynolds nor Clark was in house counsel to SNECA. The law office of Clark & Reynolds was independent of and located three blocks away from SNECA’s office. Clark & Reynolds hired its own employees who were not employees of SNECA, and paid its own office rent. SNECA does not know whether Clark & Reynolds had bank accounts for firm business, what bank(s) it did business with, or what bank account(s) it used.
6. Clark and Clark & Reynolds represented clients other than SNECA. The legal work Clark and Clark & Reynolds performed for other clients did not violate the terms of their relationship with SNECA. There was no minimum amount of work Clark or Clark & Reynolds were required to perform for SNECA in order to earn their retainer fee. SNECA did not give Clark and Clark & Reynolds any direction regarding their assignments except that SNECA requested that their assignments be completed in a timely manner and that SNECA receive appropriate copies of documents upon completion of each assignment. Although SNECA claims that it directed and Clark and Clark & Reynolds with regard to SNECA’s funds in their possession, SNECA has no written documentation supporting its claim that it had the power to govern and direct Clark & Reynolds or Clark. Neither Clark nor Clark & Reynolds were ever paid for their services beyond the fixed retainer fee, regardless of the number of transactions which arose or the number of hours devoted. Neither Clark nor Clark & Reynolds submitted any bills for their work and made no charges to SNECA for their time spent on any task, beyond the fixed retainer of $8,700.
7. At issue in the present case are certain transactions in which Clark, acting as counsel for SNECA, stole $582,996.24 of SNECA’s funds. Those transactions include the following:
a.SNECA asked Clark to collect on a promissory note made by Daniel Striar (“Striar”). Striar had purchased real estate in New Braintree, Massachusetts, from SNECA and delivered a promissory note for $279,000.00 as partial consideration for the conveyance. As of December 1994, the note remained unpaid and Clark represented to SNECA that the debt could not be collected and advised SNECA that it should write off the debt. SNECA learned in December 1995, that Striar had actually satisfied the obligation in September 1991, by delivering a check for $242,453.94 to Clark. Clark made partial payments totaling $22,600.00 on the note in order to conceal his misappropriation; however, a net amount of $219,853.94 was never returned to SNECA.
b. During the summer of 1995, SNECA entered into agreements to purchase certain real estate. In order to complete the transactions, checks were delivered to Clark for the express purpose of funding these transactions. In each instance, Clark misappropriated the funds for his own personal use. First, SNECA entered into an agreement to purchase real estate in Ashburnham, Massachusetts, for $170,000.00, and delivered three checks totaling this amount to Clark to complete the transaction. Clark deposited these checks into his personal account and misappropriated the funds for his own personal use. Second, SNECA entered into an agreement to purchase real estate located at 913 George Hill Road, Lancaster, Massachusetts, from its employee, Gary M. Temple. SNECA delivered a check for $78,110.00 to Clark to be used in purchasing the property; however, Clark misappropriated the funds for his own personal use. Third, SNECA entered into an agreement to purchase real estate at 306 Gross Lane, Lancaster, Massachusetts, from one of its pastors, David E. Thomas. SNECA delivered two checks totaling $100,454.00 to Clark to be used in purchasing the property; however, Clark misappropriated the funds for his own personal use.
c. In 1995, SNECA delivered to Clark two checks made payable to the Athol Clinton Cooperative Bank and one check made payable to Clark for a total of $15,202.00. This money was to be used to satisfy claims brought by subcontractors for work performed on the Worcester Spanish Church. Clark, however, misappropriated the money for his own personal use.
d. Clark misappropriated $6,000.00 intended by SNECA to be held in escrow for a closing on real estate in Georgetown, Massachusetts; further, Clark misappropriated $6,808.36 intended by SNECA to be held in escrow for taxes due upon the sale of certain real estate in Amesbury, Massachusetts.
8.After discovering the theft by Clark, SNECA reviewed an Executive Protection insurance policy (“the Policy”) it had purchased from Federal and discussed with its legal counsel and its insurance representative the proper way to frame the claim for insurance coverage. The initial claim by SNECA upon the Policy was characterized under the “Transit Coverage” provision. On December 5, 1995, SNECA wrote a letter in response to a request from Federal for proof of loss for SNECA’s initial claim that the thefts by Clark *508 were covered by the “Transit Coverage” provision. In this letter, SNECA stated that “Attorney Richard Clark was on retainer at an annual fee of $8,700 as legal counsel for SNECA” and, most significantly, that “Clark was not considered an employee” of SNECA. The “Transit Coverage” provision of the policy does not cover the theft of funds attributable to Clark.
9. Subsequently, SNECA submitted a claim for insurance coverage under the “Employee Theft” clause of the Policy. Federal denied that claim under the Policy’s employee theft provision, asserting that Clark was not an “employee” for purposes of the policy. After Federal’s denial, SNECA also filed a claim with the Massachusetts Clients Security Fund. Compensation from the client’s security fund is not available if the loss is covered by a fidelity bond. Rules of the Supreme Judicial Court, Rule 4:04, Section 1.
RULINGS OF LAW
The interpretation of an insurance contract is generally a question of law for the court. Jefferson Ins. Co. of New York v. National Union Fire Ins. Co., 42 Mass.App.Ct. 94, 97 (1997); Cody v. Connecticut Gen. Life. Ins. Co., 387 Mass. 142, 146 (1982). As the policyholder in the present case, SNECA bears the initial burden of proving coverage within the policy description of covered risks. Camp, Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 320 (1991). Once coverage under the policy is established, the burden then shifts to the insurer to prove the applicability of any exclusion to coverage set forth outside of the insuring clause. Id. Generally, a contract term will be construed according to its plain and ordinary meaning. Thomas v. Hartford Accident & Indemnity Co., 398 Mass. 782, 784 (1986); Royal-Globe Insurance Co. v. Martin Schultz, 385 Mass. 1013 (1982).
The Policy in the instant case is not ambiguous. The Policy provides as follows with regard to coverage for losses sustained by SNECA due to theft by an employee:
The Company [Federal] shall be liable for direct losses of Money, Securities, or other property caused by Theft or forgery by any Employee of any Insured acting alone or in collusion with others.
At issue in the present case is whether Clark was an “employee” of SNECA for purposes of the policy.[2] The Policy defines the term “Employee” as follows:
One or more persons while in the regular service of any Insured in the ordinary course of the Insured’s business during the term of this coverage section and whom any Insured compensated by salary, wages, and/or commissions and has the right to govern and direct in the performance of such service; and shall also mean . . . any director or trustee of any Insured while performing acts within the scope of the usual duties of an Employee . . . (emphasis supplied).
Federal does not dispute for purposes of the Employee Theft provision of the Policy that Clark & Reynolds was in the regular service of SNECA or that Clark & Reynolds’ work for SNECA was done in the ordinary course of SNECA’s business.
The Policy does not define “salary or wages”: therefore, the court looks to the ordinary and plain meaning of these terms in construing the Policy. The term “salary” is defined as a “fixed periodical compensation paid for services rendered.” See Black’s Law Dictionary 1200 (rev. 5th ed. 1979); Webster’s New Collegiate Dictionary (1974 ed.) The term “wages" is defined as “compensation given to a hired person for his or her services.” Black’s Law Dictionary 1416 (rev. 5th ed. 1979). Although Clark received a regular and fixed payment from SNECA for his services, which might in the abstract technically qualify under the definition of a “salary,” what he actually received was a retaining fee for his legal services. A retaining fee is a “fee given to counsel on engaging his services” by a client. Id. at 1183. The term “retainer” can mean a “fee not only for the rendition of professional services when requested, but also for the attorney taking the case, making himself available to handle it, and refusing employment by plaintiffs adversary; or it can mean solely the compensation for services to be performed in a specific case.” Id. A retainer is most commonly understood to be a “fee paid to engage the services of a professional advisor.” American Heritage Dictionary (2nd ed. 1982). Indeed, SNECA characterized its payments to Clark and Clark & Reynolds as corporation expenses and legal fees on its financial statements.
SNECA contends that Clark was an employee for purposes of the Policy because, in addition to paying Clark a “salary,” it retained, at all times, the right to govern and direct Clark in the performance of his duties regarding SNECA’s funds in his possession. SNECA concedes that Clark was an independent contractor so far as he was exercising his professional judgment in representing SNECA; however, SNECA contends that with regard to the administration of funds entrusted to him, Clark acted as SNECA’s employee and thus his theft is covered under the Policy. SNECA contends that Clark, with regard to SNECA funds in his possession, was no different than SNECA’s treasurer and held the funds subject to SNECA’s right of direction. In support of this contention, SNECA cites several cases, Shea v. Bryant Chucking & Grinder Co., 336 Mass. 312, 314 (1957), Wescott v. Honshaw Motor Co., 275 Mass. 82 (1931), which hold that a person may be an employee in one context and an independent contractor in another. These cases, however, deal with motor vehicle negligence and are inapposite in the context of professional services provided by an attorney. The distinction, argued by SNECA, that Clark was an employee with regard to holding SNECA’s funds, and an independent contractor with regard to all other activities is not persuasive. “The test used in this Commonwealth to determine *509 whether an individual is, on the one hand, a servant or employee ... or, on the other hand, an independent contractor, ... is the control which may be exercised over the individual in the performance of his work. If in the performance of his work an individual is at all times bound to obedience and subject to direction and supervision as to details, he is an employee; but if he is only responsible for the accomplishment of an agreed result in an agreed manner, he is an independent contractor. The essence of the distinction is the right to control.” (Emphasis supplied.) Brigham’s Case, 348 Mass. 140, 141-42 (1964), citing McDermott’s Case, 283 Mass. 74, 75-77 (1933) (“If the person doing the work is responsible only for the performance of what he agrees to do, in the way in which he agrees to do it, and is not subject to direction and control as to every detail of the work, he is an independent contractor”).[3] It is clear that Clark was not an employee under this test because Clark was not “at all times bound to obedience and subject to direction and supervision as to details" in his relationship with SNECA.[4]
SNECA contends that the term “employee” as defined in the Policy is broader than its ordinary meaning. That is, SNECA contends that the term, as defined, is not dependent upon withholding taxes, fringe benefits, tenure or the like; but, instead, requires merely that the employee be paid a “salary” and act with regard to the loss subject to SNECA’s right to govern and direct in the performance of its regular service. It is evident to this court, however, that what SNECA paid to Clark was not a “salary” or “wage” but a retainer for legal services for each calendar year, and that Clark was not “at all times bound to obedience and subject to direction and supervision as to details” by SNECA. Hence, Clark was an independent contractor of SNECA and not its employee. Indeed, this conclusion is consistent with SNECA’s letter, dated December 5, 1995, in which SNECA admitted that Clark was not an employee of SNECA.
Finally, SNECA argues that Clark meets the following definition of an “employee” set forth in the Policy: “[employee] shall also mean . .. any director or trustee of any Insured while performing acts within the scope of the usual duties of an Employee . . . SNECA argues that Clark was its employee under this definition because he was a trustee of SNECA whenever he possessed SNECA’s funds. This argument fails because this provision refers to persons serving in the position of a director or trustee of the insured and not any person entrusted with funds of the insured. There is no dispute that Clark was not a SNECA corporate director or trustee.
In conclusion, SNECA has failed to meet its burden to prove coverage within the Policy issued by Federal. Clark was not an “employee” for purposes of the employee theft provision of the Policy, nor was he considered as such by SNECA itself. The court, therefore, holds that SNECA is not entitled to coverage for its losses due to Clark’s theft under the Employee Theft provision of the Policy.
ORDER
For the reasons set forth above, it is hereby ORDERED that judgment enter for the defendant.

The stipulations of fact are set forth in exhibits 1 and 2. These documents are the proposed findings of fact of each party. The Court had each party take the other party’s proposed findings and underline any facts that were not agreed to. Thus, the handwritten notations on those exhibits were written by counsel to identify the facts that are contested. None of the contested facts are material to the resolution of the controversy before the Court.

Federal contends that an exclusion contained in the Policy, which bars coverage for any “loss suffered by any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same or general character,” precludes coverage for the loss suffered by SNECA; Federal contends that Clark was a consignee of SNECA and, therefore, the exclusion applies. The Court, however, is not persuaded by this argument as Clark was entrusted with money and not “goods” such that would make him a consignee of SNECA.

 Although Brigham's Case involved the interpretation of the term “employee" in the context of workers’ compensation, the definition is applicable to the case before the court because the policy definition of the term “employee” includes the “right to govern and direct” language.

Other regional associations of the Seventh Day Adventists had employed attorneys in a manner which would provide coverage under the Policy. For example, the Florida Conference employed an attorney and paid him a salary, withheld taxes, located his office on Conference property, paid him a Christmas bonus, and made available to him a pension plan, tuition credits, and health insurance. None of these benefits were made available or offered to Clark, and he maintained his own private office.