CHARLES SLUZIS'S CASE.

Suffolk.   October 9, 1935. — October 31, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Workmen's Compensation Act,* To whom act applies, Appeal. *Agency,* What constitutes, Independent contractor. *Contract,* Of employment. *Evidence,* Judicial notice, Of trade usage.

Judicial notice cannot be taken of the usages of particular trades.

The facts in a proceeding under the workmen's compensation act being undisputed, the question whether the claimant was an employee of the subscriber and entitled to compensation, or an independent contractor and not so entitled, was one of law, to be decided without reference to a purported finding of fact by the reviewing board not supported by the evidence.

A finding that a wood chopper was an employee of the owner of a woodlot, rather than an independent contractor, was not warranted by evidence merely that he was hired by the owner to cut wood in the woodlot at so much a cord, and used his own tools for the work; that the owner indicated the area in which he was to work and told him that he could select his own times for doing it; and that the owner never told him what trees to cut or how to do his work.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board.

The case was heard in the Superior Court by *Fosdick,* J.

The case was submitted on briefs.

*C. E. Rowe,* for the claimant.

*M. J. Aldrich & E. W. Sawyer,* for the insurer.

PIERCE, J.   The case comes before this court upon the appeal of the claimant from a decree of the Superior Court dismissing his claim for payments and benefits under the

workmen's compensation act. The case originally came before the Industrial Accident Board upon a claim for compensation filed August 13, 1934, in which it is set forth that on May 24, 1934, the claimant was struck by a falling tree in a woodlot and sustained a broken leg. The claim was contested by the insurer on the ground that the claimant was not an employee within the meaning of the workmen's compensation act; a question as to the average weekly wage also was raised. A hearing was had before a member of the Industrial Accident Board on September 17, 1934, under the provisions of G. L. (Ter. Ed.) c. 152, §§ 7 and 8, and he duly made a report. It was admitted at this hearing "that on May 24, 1934, the claimant sustained an accident as a result of which he broke his left leg" and was disabled to the date of said hearing because of the injury. On October 4, 1934, the board member filed a decision wherein he found and ruled that the claimant "was not an employee within the terms of the workmen's compensation act but was an independent contractor," and he ordered that the claim for compensation be dismissed. The claimant having filed a claim for review, the reviewing board heard the parties on March 14, 1935, on the questions stated in the report of the single member. The "Findings and Decision" of the reviewing board were filed on April 12, 1935. The board reversed the decision of the single member and found that the claimant was an employee within the meaning of the workmen's compensation act, and that his average weekly wage was $4.50, and made an award in accordance with said findings. The insurer then certified the case to the Superior Court, and that court on May 9, 1935, entered a decree to the effect "that the claimant . . . was not an employee of the subscriber, A. K. Turner, within the terms of the workmen's compensation act at the time of his injury on May 24, 1934, but was an independent contractor," and ordered "that the claim for compensation be and is hereby dismissed."

The pertinent facts disclosed by the material evidence reported by the board member to the reviewing board may be summarized as follows: About April 1, 1934, the claimant

was and had been for a period of four years unemployed by anyone "at anything." On or about April 1, 1934, he was told by one Skindelis that work would be found on Turner's (the subscriber's) woodlot. Skindelis did not ask the claimant "to go up and cut some wood there" and there is no evidence reported to the effect that he had authority so to do. At some time approximately two months before May 24, 1934, he went to the woodlot and "started to work cutting wood." Sometime later Turner came up and found him cutting wood on his (Turner's) woodlot. Before Turner came to the woodlot the claimant had talked with Skindelis about cutting the wood. They were chopping wood when Turner came and the claimant was putting the wood he chopped with the wood that Skindelis chopped; he had not chopped a cord. He brought with him "to the job two saws, two axes, and two wedges" and he sharpened his axes and saws himself, using a whetstone which he brought along to sharpen tools. When Turner saw the claimant cutting wood, they talked and Turner employed him to cut wood at $1.50 per cord and later he was paid $1.50 per cord.

The claimant testified that Turner "did not tell him he had to start to work at . . . any particular time in the morning or that he was to get through at any particular time"; that he could work on this job whenever he wanted to; that nobody told him how to cut the trees; that Turner showed him where to chop and told him to chop any of the trees in that section, to cut all the trees into cord wood in a section indicated; that Turner did not at any time come on the job and tell him to cut a particular tree, and he in no way directed him how he was to do his work; that the only thing Turner told him was that he would have to cut the wood in four-foot lengths and that he would have to cut a cord before he was paid; that he was the only one working in that locality, but others were scattered throughout different sections of the woods; that on May 24, 1934, he and one Stanley Bagdonis were chopping side by side; that the tree was big, and they decided that they were both going to cut it; that at the particular time when he was injured he and Bagdonis were there cutting down this one tree and

they agreed to cut that tree down, saw it up and cut it up into cord wood and then divide whatever money they received for cutting this particular tree.

The reviewing board found that the report of the single member "contains all the material evidence," and from such evidence found "that A. K. Turner was in the wood business, that he employed men to go into the woods and cut wood which he sold to his customers"; that "On or about the first of April, 1934, he hired one Charles Sluzis to cut wood at $1.50 per cord and said to him, 'Here is the lot. You can take a strip right through here'"; "that the custom [usage] . . . is such that the employee furnishes his own tools, works at such time as he sees fit and the weather permits, and is paid by the number of cords he actually cuts"; that "A person qualified to do this type of work needs no special supervision and the employee [claimant] testified in fact 'that he knew how long to cut the sticks of wood, that is, four feet long; that he knows how to cut and he has cut wood before'"; and further found that the employer seldom exercises any control over the work because of this fact. It is to be here noted that the report contains no evidence of the usage of trade as respects the furnishing and care of tools nor any evidence of trade usage whereby, in the particular trade of wood chopping, "The employer seldom exercises any control over the work." It is settled law that the court cannot take judicial notice of usages of particular trades, and that the question of the existence or not of claimed usage is a question of fact.

The board also found "that A. K. Turner retained the right to direct and control the results to be reached and the means by which it was to be accomplished but no occasion arose in this particular case in which it was necessary to exercise this right"; that "He retained the right at any time to discharge Sluzis and terminate his employment if he failed to do the work in a manner satisfactory to him or he could have employed other men to cut in the same section, had the demands of his business required it." There is no evidence in the report to support such a finding of reserved rights.

The report purports to state the interview between Turner and the claimant when the contract was made. The claimant and Turner state, in substance, that no other terms were talked over. There is no dispute as to the material facts and circumstances of the hiring, of the work to be done, or of the manner of its performance. The burden of proof was upon the claimant to establish by a fair preponderance of the evidence all material facts necessary to entitle him to compensation benefits. *Sponatski's Case,* 220 Mass. 526, 528. *De Felippo's Case,* 245 Mass. 308. *Johnson's Case,* 279 Mass. 481, 484. One of the essential facts was that the claimant was an employee and not an independent contractor. These facts must be established by evidence and not by conjecture. *Gorski's Case,* 227 Mass. 456, 459. The facts being undisputed, a question of law is presented which is not limited by any conjectural finding or speculation of the reviewing board. *Schofield's Case,* 272 Mass. 229. An employee is bound to follow the master's directions in the execution of the work, if required. A contractor undertakes to do the work, but may do it in his own way, so far as the terms of the contract do not prescribe how it is to be done. *McDermott's Case,* 283 Mass. 74, 76–77, and cases cited. In the instant case we think the claimant as a matter of law was an independent contractor and not an employee of the subscriber, A. K. Turner. The case at bar is distinguishable from *Churchill's Case,* 265 Mass. 117, *Hill's Case,* 268 Mass. 491, and *McAllister's Case,* 229 Mass. 193, because in each of those cases there were disputed facts requiring the finding of subsidiary facts upon which the board based its findings of the ultimate facts.

*Decree affirmed.*